## Lake v. Commonwealth.

(Decided June 19, 1925.)

### Appeal from Jefferson Circuit Court (Criminal Branch, Criminal Division).

1. Criminal Law—Jury—Statute Denying Appeal on Decisions of Court on Challenges to Jury Held Not Unconstitutional.—Criminal Code of Practice, section 281, denying accused right to appeal from dicisions of trial court on challenges to the panel

and for cause, held not violative of Constitution, section 11, guaranteeing speedy trial by impartial jury, in absence of any provision guaranteeing right of appeal, either in state Constitution or in federal Constitution, as applied to criminal prosecutions.

2. Criminal Law—Denial of Challenges for Cause Would Not Require Reversal, in Absence of Showing of Exhaustion of Peremptory Challenges.—Even if one accused in criminal prosecution had right of appeal from denial of challenges to jury for cause, such refusal would not be ground for reversal, in absence of showing that accused had exhausted peremptory challenges.

3. Witnesses—Rebuttal Evidence Showing Domestic Troubles of Accused, Who was Witness in His Own Behalf, Held Competent.—In prosecution for murder, where accused appeared as witness and testified that he was a dutiful, kind and affectionate husband, and did not drink or disturb peace and quiet of his home, rebuttal testimony as to his conduct towards his wife and demeanor as member of his household, held competent.

4. Witnesses—Testimony of Moral Character of Accused, Who was Witness for Himself, Competent.—In murder prosecution, where accused appeared as witness in his own behalf, testimony as to his bad moral character held competent for purpose of impeachment, under Civil Code of Practice, section 597.

5. Witnesses—Moral Reputation of Accused for Period of 2½ to 3 Years Prior to Crime .May be Proved.—In murder prosecution, proof of moral reputation of accused, who appeared as witness in his own behalf, for purpose of impeachment, by witnesses who had not associated with him during past 2½ or 3 years, held competent; period of acquaintance being not too remote.

6. Criminal Law—Remarks of Prosecuting Attorney, Confined to Reasonable Inferences From Evidence, not Improper.—In prosecution for murder, where counsel for accused objected to argument of prosecuting attorney on ground that accused denied certain testimony, statement of Commonwealth's attorney that accused could not be expected to admit testimony because it hurt him, held not improper.

7. Criminal Law—Conviction Will not be Reversed, so Long as Verdict was Result of Fair and Impartial Trial.—In prosecution for murder, where accused's attempt to show dethroned mind was so weak as to call fo racknowledgment of his counsel that it failed, although it was submitted to jury under appropriate instruction, and verdict of guilty was clearly deserved and the result of fair and impartial trial, Court of Appeals held without authority to interfere.

HARRY W. PHIPPS and HUGGINS & OLDHAM for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Thomas—Affirming.

One Saturday afternoon in July, 1924, between four and five o'clock, the appellant and defendant below, Edward Lake, who was about twenty-nine years of age at the time and married, shot and killed his wife and Mrs. Mary A. Smith. The latter was first mortally wounded by defendant and ran out of her business house, which was a part of her residence, and fell on the street car track, from which place she was afterwards taken to the hospital and later died. Immediately defendant pursued his wife across the street into a grocery, which she had sought as a place of refuge from his maddened condition, and in it he shot her several times and killed her instantly. He was indicted separately for each murder and on this trial for murdering Mrs. Smith he was convicted and sentenced to death, and from the judgment pronounced on that verdict he prosecutes this appeal, urging through his counsel three alleged grounds for a reversal of the judgment, which are, (1) erroneous rulings of the court in the selection of the jury that tried him; (2) the admission of improper testimony over his objections offered by the Commonwealth, and (3) improper remarks and argument of counsel for the Commonwealth. We will consider them in the order named.

1. It is conceded by counsel for defendant in their brief, and in oral argument of the case before this court, that under section 281 of the Criminal Code we have held, in cases innumerable, that it denied to a defendant in a criminal prosecution the right to appeal from the decisions of the trial court "upon challenges to the panel, and for cause." We suppose that it would be no exaggeration to say that since the adoption of the Criminal Code, with that section in it, we have upheld and applied it in at least one hundred cases and, consequently, have declined to review the decisions and rulings of the trial court in criminal prosecutions upon questions touching the empaneling of the jury and challenges to prospective jurymen. We so held, in the great number of cases coming before us, upon the all sufficient ground, that, by the express terms of that section the defendant was denied the right to appeal from the decision of the trial court upon those matters. Notwithstanding that history, learned counsel for defendant in this case insist (and which they say is the first time the point was ever raised) that the section is void because in conflict with section

11 of our Constitution saying, "and in prosecution by indictment or information, he (defendant) shall have a speedy, public trial by an impartial jury of the vicinage."

If section, 281, as it relates to the matters now under consideration had the effect to destroy or impair the quoted constitutional guaranty, then there would be grounds for counsel's contention, and it would not only be our duty but our delight to sustain it. But the error at the foundation of that contention is, that it assumes that the constitutional guaranty includes the right of the defendant in a criminal prosecution to an appeal from the judgment of the trial court to whatever appellate court may be established in the jurisdiction; when the fact is that it, and all other constitutional guaranties, are satisfied when the one for whose benefit they are given has had his day in court, with an afforded opportunity to present and rely upon his particular constitutional right, and when such a hearing has been had by a duly constituted court of original jurisdiction the limit of the constitutional protection is reached, unless there is a further one guaranteeing the *right of appeal.* We do not have the latter in our Constitution, nor is it in the federal Constitution so as to be applicable to criminal procedure in the respective states of the union, and the universal holdings of all of the courts, as well as the pronouncements of all text writers, is to the effect that the denial of the right of appeal is no infringement against any constitutional guaranty unless there is also one giving the right of appeal. We have so held *every time* the question has been presented to this court. One of the latest cases in which we did so is McLaughlin v. Barr, 191 Ky. 346, in which we said: "The right of appeal is a privilege which the lawmaking power has the right to bestow or to deny, and many years of experience has not demonstrated the necessity of the right of appeal in such a proceeding. It is not unlike many other causes, which when decided by the court of original jurisdiction, there is no appeal from the judgment, but, this is not a denial of jurisdiction nor the due process of law. Standard Oil Co. v. Lynn, 17 Ky. L. R. 833, and Carey v. Sampson, 150 Ky. 460." More than a page of cases from this court could be inserted wherein we announced the same principle, but, since it is so universally understood it will not be necessary to do so. As illustrating the clearly established doctrine, without a dissent from any source, we will refer to only one text authority which is, 6 R. C. L.

In treating of "Constitutional Law" the editors of that publication on pages 450-51 and 52 (paragraphs 446 and 447) state the universal rule to be that constitutional guaranties, such as we have here, including the "due process doctrine," are satisfied when the litigant, though he be a defendant in a criminal prosecution, had a hearing before a duly constituted court of original jurisdiction, and on pages 454 and 455 in speaking upon the question as to the right of appeal not being necessary to the satisfaction of such constitutional guaranties the text says: "The guaranty of due process of law does not include the right to appeal for a review of the proceedings or for the purpose of securing a second trial upon the merits, even in a criminal case, however grave may be the nature of the case." Cases from the United States Supreme Court and state supreme courts are cited in notes 3, 4 and 5 to that text and we have neither found, nor has there been cited to us, any case from any court holding to the contrary. In line with what we have said, it is also pointed out on page 445 of the same volume that such constitutional provisions and guaranties are not violated when the litigant has had a hearing before the character of court described, although that court may have made erroneous rulings against him and whereby he lost the benefit of such constitutional guaranty.

The reason for such universal accord in the courts is that a defendant in a criminal prosecution or a litigant in a civil cause is entitled to but *one* day in court and if he sustains the misfortune to be tried before an incompetent court he is unfortunate but must submit, since there is no constitutional guaranty that he shall be furnished an infallible court to try his case.

Indeed, in some jurisdictions, and which was true with us up to July 1, 1854, no appeal whatever is allowed to a defendant in convictions of a felony. Deaton v. Commonwealth, 157 Ky. 308, and Commonwealth v. Craig, 15 B. M. 534. If the provisions of our Criminal Code authorizing appeals in such cases should be repealed we take it that no one would insist that such repeal would invade the constitutional guaranty to a defendant in a criminal prosecution of a trial by a fair and impartial jury, or that any other constitutional guaranty would be invaded thereby. Practically the same question now under consideration was before this court in the Deaton case, *supra,* and at the expense of some space we will insert our disposition of it. "Next, it is contended that in

overruling appellant's motion to quash the panel the circuit court denied appellant the equal protection of the laws guaranteed him by the 14th amendment to the federal Constitution, in that he has been tried and convicted by a jury selected arbitrarily; and that if it be claimed by the Commonwealth that section 281 of the Criminal Code of Practice, *supra,* was intended to bind appellant, then that section is in violation of that other clause of the 14th amendment, which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States. We fail to see the force of the argument, as applicable to this case. Appellant has not been deprived of his right of trial by jury. The manner of selecting the jury in state prosecutions is left entirely with the states. Moreover, the jury in this case was selected after the manner of the common law, and if the state is willing to leave the determination of that question with its circuit court, it may do so without any infringement of the 14th amendment. Section 281 prescribes a general rule of practice applicable to all persons; it satisfies the constitutional maxim of furnishing a common rule for rich and poor, for the favorite at court, and the countryman at plow. It did not take from appellant any right which is guaranteed to any other person similarly situated, either by its terms or by its administration. Futhermore, the right to review by appeal the decisions. of a trial court is not a fundamental right which a defendant in a criminal case can always claim; on the contrary, it is a matter of grace, to be granted by the state in its discretion.''

The same question as to the constitutionality of section 281 of our Criminal Code was raised in the case of Howard v. Commonwealth, 118 Ky. 1. Following all our prior decisions we held therein that the question was finally determined by the trial court and that we could not review it, although it involved a constitutional guaranty to the defendant. Upon that and other questions the case was taken to the Supreme Court of the United States and it held that the section did not invade any guaranty contained in the federal Constitution, since its provisions sought to be invoked therein applied only to procedure in federal courts and not to trials in state courts; but at the close of the opinion of that distinguished court it was said, ''It will be observed that the Court of Appeals also decided that, even though the

exclusion of Alexander had been error, a reversal of the
case was forbidden by section 281 of the Criminal Code
of the state, and cited Curtis v. Commonwealth, 23 Ky.
L. R. 267; Turner v. Commonwealth (not reported);
Alderson v. Commonwealth, 25 Ky. L. R. 32. See also
Commonwealth v. Powers, 114 Kentucky, 237, where sec-
tion 281 was construed the same way. The court, in its
construction of section 281, followed the construction
established by prior cases, and did not make a discrim-
inating application of that section against plaintiff in
error. He was, therefore, not deprived of the equal pro-
tection of the laws." It will, therefore, appear that no
principle of law is better settled than the right of a state
to limit or even deny appeals and that no constitutional
guaranty is invaded thereby. If, however, it were other-
wise then it does not appear from this record that de-
fendant was denied the benefit of the constitutional guar-
anty in question, since only two jurors who sat upon his
trial entertained any opinions in his case except such as
they obtaied from newspaper reports, which they testi-
fied on their *voir dire* examination were not permanently
fixed, and which they could and would discard if the evi-
dence authorized it and give the defendant a fair and im-
partial trial. It does not appear from the record that de-
fendant had exhausted his peremptory challenges and
was compelled to accept even those two jurors when they
were accepted. It is, therefore, clearly apparent that this
ground is entirely without merit.

2. The first testimony offered and introduced by the
Commonwealth of which complaint is made under this
ground was given by a policeman and other ·witnesses
and related to the conduct of defendant toward his wife
and his demeanor as a member of his household. Only
two occasions, shortly prior to the killing, were referred
to in that testimony and the court admonished the jury
as to the purpose of its introduction and warned them
that it was not to be considered as a substantive fact as
to the guilt or innocence of defendant on the charge under
investigation. We are by no means convinced but that
such testimony was competent to prove defendant's state
of mind towards his wife and a corresponding one to-
wards her associate, Mrs. Smith, at whose house the kill-
ing occurred and to which Mrs. Lake had repaired after
leaving her husband on Tuesday before the Saturday of
the killing. But, however that may be, counsel for de-
fendant, when he was on the stand, proved by him with-

out objection from the Commonwealth that he was a most dutiful, kind and affectionate husband and greatly in love with his wife; that he did not drink, nor did he disturb at any time or any manner the peace and quiet of his home. Perhaps the purpose of that testimony was to attach some blame on Mrs. Smith by insinuating that she had alienated the affections of defendant's wife; but whatever its purpose, it was certainly competent for the Commonwealth to disprove it by rebuttal testimony and to show that instead of Mrs. Smith or defendant's wife causing his domestic troubles he himself was the author thereof.

It is also insisted under this ground that it was incompetent for the Commonwealth to prove defendant's bad moral character as affecting his credibility as a witness, and it is most earnestly insisted that proof of defendant's bad moral character, after he has testified in his behalf, is not allowed to be introduced for the purpose of impeaching him as a witness. Notwithstanding that contention, section 597 of our Civil Code expressly says that a witness may be impeached ''by evidence that his general reputation for untruthfulness *or immorality* renders him unworthy of belief,'' and we have held in an almost unlimited number of appeals in criminal prosecutions that the provision of that section of the Civil Code applied to the practice in criminal prosecutions and that it was applicable to a defendant after he offered himself as a witness in his behalf and testified in the case. Bennett v. Commonwealth, 171 Ky. 63; Day v. Commonwealth, 173 Ky. 269; Lockard v. Commonwealth, 87 Ky. 201; Warrix v. Commonwealth, 195 Ky. 795; Hill v. Commonwealth, 191 Ky. 477; Owens v. Commonwealth, 188 Ky. 498, and Loving v. Commonwealth, 209 Ky. 536 (decided June 12, 1925). Those cases are but a comparatively few of the many in which we have upheld the right of the Commonwealth to impeach the defendant, after he has testified, by proof of his prior bad moral character, and for the general rule upon the subject see the text in 40 Cyc. 2595-6-7. In the notes to that text is a long list of Kentucky cases prior to the ones we have cited and the only one contra therein referred to from this court is Montgomery v. Commonwealth, 17 Ky. L. R. 94, wherein in a very brief opinion Judge Pryor held that testimony of bad moral character was inadmissible to impeach the credibility of the defendant after he had testified as a witness in his behalf. No case is cited in sup-

port of that holdng and it is in the face of every other case preceding it and every other one succeeding it, except an inadvertent statement in the opinion in the case of Denton v. Commonwealth, 188 Ky. 30. But in the latter case the question was not presented and the inadvertent statement in the opinion was pure dictum and has not been followed or even referred to in any subsequent case where the question was presented. It is clear that this alleged error is without merit.

But it is also urged that the proven reputation was by witnesses who had not lived near to or associated with defendant for a period of two and half or three years and related to his moral reputation while he lived at Harrodsburg, Kentucky, before he moved to the city of Louisville. We will not take up time nor space in discussing this objection, since we have held that reputation may be proven for a much longer past period than was done in this case and we are convinced that the testimony was not objectionable on that account. The defendant had not lived in Louisville at one place long enough to establish a reputation, but in any event the time to which it related was not so remote as to destroy its competency.

3. Lastly, it is insisted that the remarks of counsel for the Commonwealth were so prejudicial as to authorize a reversal of the judgment. We will not set out all of the remarks made by the Commonwealth's attorney in his argument to the jury and to which objection was made. No doubt the strongest one, as counsel conceives, for he argues it most, was a reply which counsel made to an objection from defendant's counsel. The prosecutor was referring to testimony by a witness for the Commonwealth when he was interrupted by an objection from defendant's counsel saying "Lake denied it" and the Commonwealth's attorney replied, "Lake did, but Mr. Smith testified to it. You can't expect Lake to admit it because it hurts him." It is the latter statement, "it hurts him," that counsel seem to think is all sufficient to authorize a reversal of the judgment. But we cannot agree with him, not only because the remark was largely immaterial if improper, but also because it was not improper. We have frequently laid down the limitations of prosecuting counsel in his argument to the jury and have said that in the heat of discussion it is almost impossible to prevent inapt, irrelevant and possibly incompetent statements; but so long as counsel kept within

the record and discussed the testimony in the case and drew legitimate inferences from proven facts and circumstances he was within his rights. The latest case dealing with the practice is that of Bolin v. Commonwealth, 206 Ky. 608, in which other recent ones are cited. Measured by the rules therein laid down we find nothing in the complaint of remarks constituting a material departure from the limitations therein prescribed.

Because of commendable zeal of counsel who briefed the case, but who did not defend him at the trial, and because of the distressful consequences to defendant, we have tried to give this case most careful consideration. Our legislature has enacted that one found guilty of premeditated murder may be punished with death. Strange as it may seem there are people who will continue to commit it notwithstanding the existence of that statute. If a case could be imagined where the severest punishment was deserved this record discloses that this is one of them. Two innocent women, one of them his wife and the mother of his two small children, were assassinated by defendant without any sort of cause or excuse. True, he attempted to show a sort of dethroned mind, but the effort was so weak as to call for an acknowledgment on the part of counsel that it failed. After its elimination, by the verdict of the jury, to which it was submitted in an appropriate instruction, the case is wholly barren of anything approaching a legal excuse or, possibly, not even a sympathetic one. Having so found our duty is ended, since we are without authority to interfere, even were we so inclined, with the verdict of the jury returned as the result of a fair and impartial trial.

Finding no error authorizing a reversal of the judgment, it is affirmed. Whole court sitting.