RENDERED: SEPTEMBER 4, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

MODIFIED: DECEMBER 4, 2020; 10:00 A.M.

# Commonwealth of Kentucky

# Court of Appeals

NO. 2018-CA-1753-MR

KENTUCKY RETIREMENT SYSTEMS                    APPELLANT

|     | APPEAL FROM FRANKLIN CIRCUIT COURT |
| --- | --- |
| v.  | HONORABLE PHILLIP J. SHEPHERD, JUDGE |
|     | ACTION NO. 16-CI-00066 |

NANCY GAUZE                                          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND MAZE, JUDGES.

COMBS, JUDGE: The Kentucky Retirement Systems (the Appellant) appeals an

opinion and order of the Franklin Circuit Court of October 25, 2018, reversing the

agency's decision to deny disability benefits to Nancy Gauze (the Appellee).

Appellant argues that the Franklin Circuit Court erred by not dismissing the case

for lack of prosecution pursuant to CR[1] 77.02 and by re-weighing the evidence. We disagree with both arguments. Thus, after our review, we affirm.

Gauze worked as a Food Service Manager for the Ashland Independent School District for twenty-three years. Her duties included: (1) preparing breakfast and lunch for Ashland Middle School students; (2) recording inventory; (3) supervising food staff; and (4) stocking orders. She worked approximately eight hours per day. Her job required her: (1) to stand or walk during most of her shift; (2) to lift boxes of food products weighing as much as forty pounds or more; and (3) to bend, stoop, and squat repeatedly. Over the course of the years, Gauze testified that her legs and arms would often "go numb."

Gauze requested and received accommodations from her employer. Floor mats were laid on tile floors and she was provided non-skid shoes. A hand-cart was made available to her for use in open areas. However, even with these accommodations, Gauze was unable to perform all her duties. It became necessary for co-workers to assist her. In light of her need of assistance, Gauze's supervisor expressed concern about her ability to do her job.

In order to remedy some of her conditions, Gauze planned physician-recommended surgery. Her last day of physical work prior to her surgery was December 18, 2013. On December 27, 2013, Gauze underwent surgery to address

---

[1] Kentucky Rules of Civil Procedure.

issues pertaining to: (1) lumbar spinal fusion; (2) rheumatoid arthritis; (3) lumbar disc disease; (4) fibromyalgia; (5) cervical disk budge; (6) dizziness; and (7) numbness. Her recovery was gradual. Her neurosurgeon eventually cleared her to return to work, but he restricted her to lifting no more than fifty pounds -- and doing so no more than twice a day. Gauze informed only her direct supervisor of her restrictions. He advised her there was no "light duty" work available in the school system for which she qualified. "Light work" is defined in KRS[2] 61.600(5)(c)2 as follows:

> Light work shall be work that involves lifting no more than twenty (20) pounds at a time with frequent lifting or carrying of objects weighing up to ten (10) pounds. A job shall be in this category if lifting is infrequently required but walking and standing are frequently required, or if the job primarily requires sitting with pushing and pulling of arm or leg controls. If the person has the ability to perform substantially all of these activities, the person shall be deemed capable of light work. A person deemed capable of light work shall be deemed capable of sedentary work unless the person has additional limitations such as the loss of fine dexterity or inability to sit for long periods.

She did not inform or consult with anyone else in the school system, including the Human Resources Department. She simply resigned, and her last day of paid employment was September 30, 2014.

---

[2] Kentucky Revised Statutes.

Gauze filed an application for early retirement benefits based on her disability due to the issues listed above. She explained she was unable to lift and stand for a long period of time. After reviewing her application, the Appellant's Medical Review Board recommended denial.

Gauze then requested and was granted an administrative hearing. After the hearing, the hearing officer prepared findings of fact, conclusions of law, and a recommended order upholding the Medical Review Board's denial of benefits. In relevant part, the recommended order states as follows:

> Claimant has failed to establish disability based upon the cumulative effect of her conditions. Claimant failed to present her required restrictions to anyone else other than her direct supervisor. The Record does not show whether Claimant discussed her claim with Human Resources prior to filing her notice of resignation as was recommended by her physician. Regardless, Claimant testified that she was given multiple accommodations, and that her co-workers were there for assistance when she needed it. None of Claimant's treating physicians provided statements which would render her conditions debilitating. Claimant claimed that the majority of her conditions were controlled medicinally, and the records did not indicate that these medications were ever discontinued. For these reasons, Claimant has failed to establish disability based upon the cumulative effect of her conditions.

(Record (R.) at 501-02.) After the Appellant's Disability Appeals Committee met, the Appellant's Board of Trustees adopted the hearing officer's recommended order.

- 4 -

Contending that the record contained substantial evidence to show that she was unable to perform her duties due to a disability, Gauze appealed to the Franklin Circuit Court. Appellant filed its answer on February 5, 2016, but no action was taken on the case for more than a year. The Clerk of the Franklin Circuit Court issued a notice to dismiss for lack of prosecution. Gauze filed no pleadings to show good cause why the case should not be dismissed, and she took no other action to pursue her appeal. Nevertheless, the Franklin Circuit Court, *sua sponte*, issued an order establishing a briefing schedule. Following the submission of briefs, the Franklin Circuit Court reversed the Appellant's final order, **finding that it was not supported by substantial evidence** and ordering Appellant to award Gauze disability benefits. This appeal followed.

KRS 13B.160 governs this Court's review of a circuit court's prior review of a final order of an administrative agency. Therefore, our Court must adhere to KRS 13B.150(2). We may not substitute our judgment for that of the agency as to the weight of the evidence on questions of fact. KRS 13B.150(2). Our review of an administrative action is generally focused on the question of arbitrariness. *Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky. 1982). If substantial evidence exists to support the agency's findings, those findings must be upheld despite the presence of conflicting evidence. *Ky. Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981). Substantial evidence is

"evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable men." *Ky. State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972). As the sole fact finder, an administrative agency has broad discretion in evaluating the evidence. *Aubrey v. Office of Attorney General*, 994 S.W.2d 516, 519 (Ky. App. 1998). However, its conclusions of law are subject to our *de novo* review. *Mill Street Church of Christ v. Hogan*, 785 S.W.2d 263, 266 (Ky. App. 1990).

Appellant first argues that the circuit court erred by failing to dismiss the case for lack of prosecution pursuant to CR 77.02(2). CR 77.02 is essentially a "housekeeping rule" utilized to remove stale cases from a court's docket. This rule was created for use by trial courts -- not by appellate courts. It provides as follows:

> At least once each year **trial courts** shall review all pending actions on their dockets. Notice shall be given to each attorney of record of every case in which no pretrial step has been taken within the last year, that the case will be dismissed in thirty days for want of prosecution except for good cause shown. The court shall enter an order dismissing without prejudice each case in which no answer or an insufficient answer to the notice is made.

CR 77.02(2) (emphasis added). In the case before us, the Franklin Circuit Court was functioning as an appellate court. KRS 61.645(14) ("Any person adversely affected by a decision of the board . . . **may appeal** . . . to the Franklin Circuit

- 6 -

Court") (emphasis added). Because the Franklin Circuit Court was acting in an appellate capacity, arguably CR 77.02 may not be applicable at all.

Regardless, a court always enjoys discretion in deciding whether or not to dismiss a case for lack of prosecution. Trial courts have wide discretion in dismissing cases under CR 77.02. *Honeycutt v. Norfolk S. Ry. Co.*, 336 S.W.3d 133, 135 (Ky. App. 2011). The circuit court did not abuse its discretion proceeding as it did.

Appellant next argues that the circuit court erred by re-weighing the weight of the evidence. We disagree.

A court cannot substitute its judgment for that of an administrative agency as to the weight given to evidence bearing on fact issues. KRS 13B.150(2). The agency as trier of fact "is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses appearing before it." *Bowling v. Nat. Res. and Envtl. Prot. Cabinet*, 891 S.W.2d 406, 409-10 (Ky. App. 1994).

With that guideline in mind, the circuit court observed that a reviewing court may overturn an agency's decision if the evidence in favor of the party bearing the burden of proof "is so compelling that no reasonable person could have failed to be persuaded by it." *Ky. Ret. Sys. v. Ashcraft*, 559 S.W.3d 812, 816 (Ky. 2018) (citing *McManus v. Ky. Ret. Sys.*, 124 S.W.3d 454, 458 (Ky. App. 2003)). The circuit court reversed after "find[ing] the agency's final order

is . . . [w]ithout support of substantial evidence on the whole record . . . ."  KRS 13B.150(2)(c).

At issue is the sometimes elusive -- if not necessarily subjective -- determination of what is truly **substantial** evidence.  There is no doubt that there is ample evidence in this record supporting both sides.  However, the mere quantity of evidence is not the test.  As noted by both *Ashcraft*, *supra*, and *McManus*, *supra*, the qualitative element of the evidence is critical, *i.e.*, that it is "so compelling" that "no reasonable person could have failed to be persuaded by it." *Ashcraft,* 559 S.W.3d at 816.

In the case before us, the circuit court carefully reviewed the evidence, recounting in considerable detail the rigorous tasks that Gauze performed daily in the course of her twenty-three years of service.  She was on her feet almost constantly for eight hours and performed a variety of functions, including heavy lifting of food products to stock the cafeteria.  The court observed as follows:

> . . . However, according to the job descriptions in the record, the heaviest items that she lifted unassisted were frozen foods and sauces, which weighed approximately thirty (30) to fifty (50) pounds.  RO at 16; AR at 6, 9. She was required to carry these and other items approximately eighteen (18) feet and did so for roughly two and a half (2.5) hours of each day.  AR at 6, 9. Gauze also testified that she lifted eighty (80) pounds of frozen ground beef, thirty (30) pounds of corn, and thirty (30) pounds of green beans.  RO at 16.  She testified that her job required repetitive "lifting, bending, stooping, [and] squatting."

When asked about "the physical effort requirements for the employee to perform his or her job duties as of the last day worked," both Gauze and her employer noted that the requirements were "[v]ery hard work on the back, hands, arms, legs and feet." AR at 6, 9. Her supervisor also submitted a memo dated August 26, 2014, in which she explained that "[t]he Food Service Manager position does not have a light duty. There is a lot of lifting and standing. Employee must be able to stand for a long period of time and lift product."

Opinion and Order, Franklin Circuit Court, October 25, 2018, p. 2.

In a carefully-crafted, well-reasoned opinion, the court undertook a thorough analysis of all the evidence in this case. Its opinion recited the elements of KRS 13B.150(2) setting forth the statutory criteria that both govern and circumscribe the role of a court reviewing a final order of an administrative agency. The court reasoned that the quality of the evidence wholly supported the conclusion that Gauze presented evidence so compelling that no reasonable person could deny her eligibility for disability benefits.

The circuit court reasoned as follows in a portion of its opinion entitled, "The Agency's Decision is Not Supported by Substantial Evidence":

Though the parties presented various arguments, this case can be resolved under the "substantial evidence" standard. The evidence available in the Administrative Record reveals the following: Gauze suffered from degenerative disc disease and underwent a L4-5 laminectomy, bilateral foramintotomies at L3-4, L4-5, and L5-S1, excision of a left L4 synovial cyst, and fosterolateral fusion surgery on December 27, 2013.

- 9 -

Gauze's neurosurgeon, Dr. Powell, did not release her to return to work until August 6, 2014. He conditioned her release on a fifty (50) pound lifting restriction, and she was instructed not to lift more than twice a day. Dr. Powell advised her that this lifting restriction must be accommodated; otherwise, Gauze must seek permanent disability status. However, due to the heavy and repeated lifting required of a Food Service Manager, Gauze's employer could not accommodate the lifting restrictions imposed by Dr. Powell. Accordingly, her last day of paid employment was on September 30, 2014. Despite this evidence, the Agency denied Gauze's application and now argues that the lifting restrictions imposed by Gauze's neurosurgeon were "minor." [citations omitted]. However, Gauze's employer indicated that she could not accommodate the restrictions and stated that there was no light duty work available for Gauze. This was supported by the memo submitted by Gauze's supervisor, the job descriptions submitted by Gauze and her employer, and the testimony of Gauze. Thus, the Court finds Respondent's characterization of the restriction as "minor" to be wholly unpersuasive. It is clear that, regardless of how "minor" the restriction, it could not be accommodated.

The fact that the restriction could not be accommodated is not altered by the presence of a handcart or the assistance that Gauze previously received from her coworkers. Though Respondent refers to these forms of assistance to support its denial of Gauze's application, the record clearly indicates that Gauze received such assistance *prior* to her surgery and the resulting lifting restrictions. In addition, her supervisor acknowledged that the handcart provided help only in open areas of the kitchen and cafeteria; it could not be used in tighter spaces. Furthermore, her supervisor explained that each employee is expected to perform his or her daily tasks and expressed concern upon discovering that Gauze received help from her coworkers. Of course, the record also contains the

- 10 -

supervisor's unequivocal denial of the request for accommodation, which was joined by an Agency Representative. **No reasonable person would review this evidence and fail to be persuaded that the lifting restriction could not be accommodated.**

The agency also places tremendous weight on the fact that Gauze did not speak directly with or submit a written accommodations request to Human Resources. However, from even a cursory review of the record, it is clear that Human Resources could not have accommodated the lifting restrictions imposed by Dr. Powell; at most, the department could have provided her with a written denial of her accommodations request. However, though the Agency places great weight on the fact that the record lacks such a written denial, the Court again notes that Gauze's supervisor stated—in unequivocal terms—that Gauze's lifting restrictions could not and would not be accommodated. **Any reasonable person viewing this evidence would understand that Gauze's accommodation request was impossible to fulfill.**

Opinion and Order, *supra*, pp. 9-11 (emphases added).

In summarizing the quantity and quality of the evidence, the circuit court recapitulated both its substantial nature supporting Gauze and its quantitively compelling nature:

Even without considering the cumulative effective of the various other ailments suffered by Gauze, the Court finds that the Agency erred in denying Gauze's disability benefit application. There is **substantial evidence** on the record demonstrating that Gauze suffers from degenerative disc disease and, since at least August 6, 2014, she has been limited to lifting fifty (50) pounds or less, no more than twice a day. There is also **substantial evidence** in the record to show that this restriction cannot

- 11 -

and would not be accommodated. Thus, there is **substantial evidence**, including objective medical evidence, on the record to show that Gauze is and has been permanently incapacitated from performing her job as a Food Service Manager since her last day of paid employment on September 30, 2014. The evidence is **so overwhelming as to compel** a finding in Gauze's favor. For these reasons, this Court finds that the Agency's decision was not supported by substantial evidence and the Final Order must be reversed.

Opinion and Order, *supra*, p. 12 (emphases added).

The Appellant premises its allegation of error on an improper "re-weighing" of the evidence by the circuit court. Much discussion has focused on the proper measure of discretion that a court reviewing administrative law matters must accord to an agency. An agency's discretion is broad indeed. But it is not absolute or unfettered. Administrative determinations surely cannot be immune from the scrutiny of a reviewing court without undermining and sabotaging the guarantee of the right of at least one appeal under Section 115 of the Constitution of Kentucky.

And so, as noted at the onset of this opinion, the question remains: how does a reviewing court comply with its constitutional duty to conduct an appeal if it is bound to accord to an agency what has become an almost insurmountable level of deference to agency decisions? The answer has to be one of finding the proper balance between deference to an agency as set forth by statute and the constitutional guarantee of a meaningful appeal/review. And in order to be

meaningful, an appeal must -- perforce -- entail a court's review of the same evidence that was initially weighed by an administrative body. Needless to say, any judicial review could be characterized as "re-weighing" of the evidence. But that characterization in this case is merely semantic.

All the evidence in this case was clear that Ms. Gauze suffered severely debilitating injuries after twenty-three years of service to the Ashland Independent School District. Yet in a highly conclusory and perfunctory order, the Kentucky Retirement Systems found otherwise -- essentially by administrative *fiat*.

The Franklin Circuit Court meticulously reviewed the evidence -- as was its duty. In its review, the Franklin Circuit Court correctly found repeatedly that the agency's order denying Gauze's benefits clearly was not supported by substantial evidence. Again, Section 115 of the Kentucky Constitution guarantees one appeal as a matter of right to every litigant. No statute can override or supersede that right of constitutional import. And we must presume that an appeal shall be meaningful and honest rather than an act of perfunctory deference to an agency decree -- where substantial evidence is merely recited rather than demonstrated.

We are persuaded that the Franklin Circuit Court wholly complied with its constitutional mandate to review the evidence in this case. We reject the

argument that it engaged in an "improper re-weighing" of the evidence or substitution of its judgment for that of the agency.

Consequently, we AFFIRM the opinion and order of the Franklin Circuit Court reversing the decision of the Kentucky Retirement Systems.

MAZE, JUDGE, CONCURS.

ACREE, JUDGE, DISSENTS.

ACREE, JUDGE, DISSENTING: Respectfully, I dissent because the majority opinion misconceives the law applicable to the issues presented.

To begin, the majority opinion misinterprets Section 115 of the Kentucky Constitution as guaranteeing someone, like Gauze, the right to seek review of an agency's adverse final order. It does not.

Section 115 "presupposes that the appealed cause was in the first instance vested in a court." *Moore v. Kentucky State Penitentiary (Corrections Cabinet)*, 789 S.W.2d 788, 789 (Ky. App. 1990). So, while Section 115 does, and did, allow the Kentucky Retirement Systems the *privilege* of appealing the Franklin Circuit Court ruling to this Court of Appeals,[3] Gauze's right to access the

---

[3] Appellate review is not a fundamental right protected by the federal constitution on a par with the right to seek redress of grievances. "[N]o principle of law is better settled than the right of a state to limit or even deny appeals, and that no constitutional guaranty is invaded thereby." *Lake v. Commonwealth*, 209 Ky. 832, 273 S.W. 511, 513 (1925). In Kentucky before January 1, 1976, "appellate review [even] in criminal cases was not a constitutional right." *Blankenship v. Commonwealth*, 554 S.W.2d 898, 900 (Ky. App. 1977). Appellate review then was a legislative prerogative, a privilege doled out by statute for specific causes. The privilege only became a universal right of Kentuckians with "the new policy of Section 115 of the Kentucky Constitution

- 14 -

justice system initially is recognized as a fundamental right by the First

Amendment, which ensures "the right of the people . . . to petition the Government

for a redress of grievances." U.S. CONST. amend. I; *California Motor Transport

Co. v. Trucking Unlimited*, 404 U.S. 508, 510, 92 S. Ct. 609, 612, 30 L. Ed. 2d 642

(1972) ("right of access to the courts is indeed but one aspect of the right of

petition"). The First Amendment right of redress, being applicable to the states

through the Fourteenth Amendment,[4] is again guaranteed in Section 14 of the

Kentucky Constitution to protect "[t]he right of every individual in society to

access a system of justice to redress wrongs . . . ." *O'Bryan v. Hedgespeth*, 892

S.W.2d 571, 578 (Ky. 1995).

This being so, one must question the seemingly inconsistent and oft-

repeated adage that "[a]n appeal from an administrative decision is a matter of

legislative grace and not a right, and thus the failure to strictly follow statutory

guidelines for the appeal is fatal." *Gallien v. Kentucky Bd. of Medical Licensure*,

336 S.W.3d 924, 928 (Ky. App. 2011). The answer is that this statement is a

---

that there shall be as a matter of right one appeal in every case . . . ." *Yocom v. Franklin County Fiscal Court*, 545 S.W.2d 296, 299 (Ky. App. 1976).

[4] "The United States Constitution, by the First Amendment, provides, 'Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.' This Amendment becomes applicable to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Kentucky Constitution separately heralds the protection of these rights . . . ." *Associated Industries of Kentucky v. Commonwealth*, 912 S.W.2d 947, 952 (Ky. 1995).

conflation of several concepts – (1) the U.S. Constitution amendment I/Kentucky Constitution Section 14 right of redress; (2) legislative grace in creating statutory claims; and (3) the requirement of strict compliance to pursue such claims. One can research the concept stated in *Gallien* back in time until you find a better explanation. For example, recognizing the fundamental First Amendment right of redress reflected in our own constitution, our highest Court said in *Kendall v. Beiling*:

> The right to resort to the courts is implicit in the terms of Section 14 of the Constitution of Kentucky, declaring that all courts shall be open and every person shall have a remedy by due course of law for any injury to his person or property or reputation. It is the inherent power of the courts to scrutinize the acts of such administrative tribunals wherein the person or property rights of an individual have been adjudicated, and *no special provision of a statute is necessary to confer authority already possessed by them under the constitution.*

295 Ky. 782, 175 S.W.2d 489, 491 (1943) (emphasis added).

Although Kentuckians need no statute to access the courts to challenge a government agency's decision, the legislature exercised its authority to control the process by delineating in statutes how court access occurs. The statute governing disability retirement says how a person "may qualify to retire on disability . . . ." KRS 61.600(1). Disability retirement, like the right to appeal from one court to another, is not a fundamental right. It is a benefit system established by legislative prerogative. Whether one can qualify to retire on

disability depends upon satisfying conditions the legislature established and that the Kentucky Retirement Systems administers.  The legislation places the burden on the claimant to present enough evidence to convince the agency, not the courts, that benefits should be awarded.  Until found to be unconstitutional, Kentucky statutes defining standards for seeking and obtaining benefits must be strictly followed.  But the right of redress in Kentucky courts exists with or without them.

A person can claim that right by filing an original action in those courts.  The legislature reiterated the concept that these are original actions in the statute defining circuit court jurisdiction, stating, "The Circuit Court may be authorized by law to review the actions or decisions of administrative agencies, special districts or boards.  Such review *shall not constitute an appeal but an original action*."  KRS 23A.010(4) (emphasis added).  The statute is clear and consistent with the constitutional right *to initiate an action* to seek redress of a grievance; these are *not* administrative appeals.  That means all the rules of civil procedure apply, including CR 77.02.  CR 1(2).[5]

It is also well-settled that when the right to claim a government benefit "is granted by statute, a strict compliance with its terms is required."

---

[5] In pertinent part, CR 1 says: "These Rules govern procedure and practice in all actions of a civil nature in the Court of Justice except for special statutory proceedings, in which the procedural requirements of the statute shall prevail over any inconsistent procedures set forth in the Rules."  CR 1(2).  There are no procedural requirements of Chapter 13B or KRS 61.510, *et seq.*, governing the Kentucky Retirement Systems that prevail here.

*Louisville Gas & Elec. Co. v. Hardin & Meade County Property Owners for Co-Location*, 319 S.W.3d 397, 400 (Ky. 2010) (quoting *Board of Adjustments of City of Richmond v. Flood*, 581 S.W.2d 1, 2 (Ky. 1978)). Those terms requiring compliance are found in KRS Chapter 13B. KRS 61.665(5) (allowing "judicial review in the Franklin Circuit Court in accordance with KRS Chapter 13B").[6]

Beyond misidentifying the source of Gauze's right of review, the majority opinion excuses the circuit court's clear error in applying the law. Affirming the circuit court requires turning a blind eye to the circuit court's violation of the civil rules and statutes that govern adjudication of Gauze's petition for a redress of her grievance.

The first error compelling reversal is revealed on the face of the majority opinion, which states the following:

> [N]o action was taken on the case for more than a year. The Clerk of the Franklin Circuit Court issued a notice to dismiss for lack of prosecution. Gauze filed no pleadings to show good cause why the case should not be dismissed, and she took no other action to pursue her appeal. Nevertheless, the Franklin Circuit Court, *sua sponte*, issued an order establishing a briefing schedule.

---

[6] KRS 13B.140(1) says "[a] party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes . . . ." After captioning the statute as structuring a "judicial review," it then uses the term "appeal" in its body. This is unfortunate considering the term "appeal" is inconsistent with the First Amendment right to initiate an action for redress of a grievance against the government. *Kendall*, 175 S.W.2d at 491. To be clearer, the denial of benefits under KRS 61.600, *et seq*., is a grievance entitling the party to initiate, consistent with the First Amendment, an original action in circuit court where the legislature established jurisdiction pursuant to KRS 23A.010(4).

Majority opinion, *supra*, at p.5.  This passage shows generally that although Gauze stopped pursuing her claim, the circuit court became proactive in advancing it.

To be even clearer, the record shows the court clerk notified Gauze that "the *case will be dismissed in 30 days* for want of prosecution *unless* there is filed in the record prior thereto a pleading, with affidavit, showing *good cause* why no steps have been taken of record for more than a year."  (AOC[7] Form 2-050; R. at 19 (emphasis added).)  This is consistent with the rule of procedure that binds the circuit court no less than the parties, CR 77.02.  The rule applies to "all pending actions on their [Kentucky trial courts'] dockets . . . in which no pretrial step has been taken within the last year," and mandates that "the case will be dismissed in thirty days for want of prosecution except for good cause shown."  CR 77.02(2).  To emphasize its mandatory nature, the rule then states:  "The court *shall enter an order dismissing without prejudice* each case in which no answer or an insufficient answer to the notice is made."  *Id.* (emphasis added).

Did Gauze comply with the rule?  Did she file a pleading, supported by a notarized affidavit, explaining why she did not intend to abandon her claim against the government despite all appearances to the contrary?  No, she did not.

Did the circuit court comply with the rule?  Did the circuit court enter an order dismissing Gauze's case without prejudice as the rule required?  No.

---

[7] Administrative Office of the Courts.

Instead, the circuit court saved Gauze's case by entering a *sua sponte* order setting a briefing schedule and, in effect, signaling Gauze that she would not be wasting her time by filing a brief. As it turns out, she was not wasting her time.

Gauze never asked to submit briefs as she was entitled to do. KRS 13B.150(1) (emphasis added) ("The court, *upon request*, may hear oral argument and receive written briefs."). Without any request to brief the case, the circuit court elected to resurrect a claim the Kentucky Retirement Systems had every reason to believe it could put behind it.[8]

But what of the notion that CR 77.02 is a mere "housekeeping rule, within the wide discretion of the trial court"? *Honeycutt v. Norfolk Southern Ry. Co.*, 336 S.W.3d 133, 135 (Ky. App. 2011) (citing *Hertz Commercial Leasing Corp. v. Joseph*, 641 S.W.2d 753 (Ky. App. 1982)). Without context, that statement is somewhat unsophisticated and thus inaccurate. *Hertz*, upon which *Honeycutt* relies, did not put that "housekeeping rule" label on CR 77.02, but said only that the rule "has been referred to as a 'housekeeping' rule which has as its purpose expediting the removal from the docket of stale cases." *Hertz*, 641 S.W.2d

---

[8] Nothing in KRS 13B.140 or KRS 13B.150 requires the circuit court to review anything more than the petition and the agency record and, obviously, the response if there is one. Here, the circuit court was not prompted by a motion, or a notice of submission on the record, or a Form AOC-280 (Notice of Submission of Case for Final Adjudication). Such efforts, of course, are not required. However, if Gauze assumed she had done all that was necessary to entitle her to judicial review, she failed to make her understanding known to the circuit court when she was delivered a notice to show cause under CR 77.02.

at 755. *Hertz,* in fact, emphasized the rule's mandatory components that must be satisfied before the court's discretion comes into play. *Id.* (emphasis added) ("We deem these requisites [of CR 77.02] to be *mandatory*"; "what we consider to be *mandatory steps were not taken*").

It is mandatory that the plaintiff demonstrate good cause for leaving the case on the court's docket. CR 77.02(2). Only if the plaintiff so complies is the circuit court then authorized the discretion to determine what is or is not good cause. But, make no mistake, the rule leaves no discretion when, as here, the plaintiff presents no cause whatsoever. CR 77.02(2) ("The court shall enter an order dismissing without prejudice each case in which no answer . . . is made."). The circuit court ordered briefing in derogation of the mandate of CR 77.02(2) to dismiss the case. The court then reweighed the evidence, contrary to KRS 13B.150(2), just as the Kentucky Retirement Systems argues.

As correctly stated by the majority, "a court cannot substitute its judgment for that of an administrative agency as to the weight given to evidence bearing on fact issues." Majority opinion, *supra*, at p.7. That is because the Kentucky Retirement Systems alone is vested with the "administrative duties to carry out its policies by discretionary decisions" and "a 'de novo' trial in the circuit court" that reweighs the evidence is both "unconstitutional and void." *Am. Beauty Homes Corp. v. Louisville and Jefferson Cty. Planning and Zoning Comm'n*, 379

S.W.2d 450, 455 (Ky. 1964). The very language of the majority opinion demonstrates the circuit court's disregard of that admonition when the lower court found "the Appellant's final order . . . **was not supported by substantial evidence** . . . ." Majority opinion, *supra*, at p.5 (original emphasis).

For example, the opinion quotes the circuit court's conclusion that the agency's "characterization of the restriction [on Gauze's activity] as 'minor' to be wholly unpersuasive." Majority opinion, *supra*, at p.10 (quoting circuit court order). But it is not the Systems' role to persuade the circuit court; the burden was Gauze's to show the absence of substantial evidence. The Systems found as fact that the restriction was minor; the circuit court's role was to accept that fact unless the finding lacked support of substantial evidence. Some of that substantial evidence is described in the Systems' opinion and order, but all of it can be found in the administrative record.

Gauze's burden was to demonstrate that such evidence was not in the record, and she failed to meet it. She simply wanted a reweighing of the evidence. As the majority said, "Contending that the record contained substantial evidence to show that she was unable to perform her duties due to a disability, Gauze appealed to the Franklin Circuit Court." Majority opinion, *supra*, at p.5. That is not enough.

Similarly, the majority opinion quotes the circuit court's criticism that "[t]he agency . . . places tremendous weight" on this evidence and "great

- 22 -

weight" on that evidence, ignoring the fact that it was all substantial evidence that supported the agency order. Majority opinion, *supra*, at p.11 (quoting circuit court order). A jurist cannot determine from a cold record what was in the head of the factfinder and whether he attributed tremendous weight or great weight or some other weight to this evidence or that. I have no doubt, however, that a reviewing court's subjective determination of what weight was given some evidence as opposed to other evidence is itself a reweighing of the evidence. Unquestionably, these quotes demonstrate the circuit court's disregard of the statute that says, "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." KRS 13B.150(2).

As if this were not enough, the majority acknowledges the circuit court reached its decision to reverse the agency's final order after considering "the quantity and quality of the evidence" the agency had before it. Majority opinion, *supra*, at p.11. The majority opinion could not ignore entirely the evidence supporting the agency decision. "There is no doubt[,]" says the majority, "that there is ample[9] evidence in this record supporting both sides." Majority opinion, *supra*, at p.8. After first saying the concept of "substantial evidence" is "elusive," the majority then suggests the "ample evidence" supporting the final order was not

---

[9] "Ample" is defined as "generous or more than adequate in size, scope, or capacity . . . generously sufficient to satisfy a requirement or need." *Ample*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://merriam-webster.com/dictionary/ample (last visited Nov. 23, 2020).

"truly substantial evidence." Majority opinion, *supra*, at p.8. I disagree as to both accounts.

Far from being elusive, "[s]ubstantial evidence has been conclusively defined" for at least a quarter century according to my learned colleague who authored the majority opinion. *Transp. Cab., Dep't of Highways, Commonwealth of Ky. v. Thurman*, 897 S.W.2d 597, 600 (Ky. App. 1995), *abrogated on other grounds as recognized in City of Danville v. Goode*, 122 S.W.3d 591, 593 (Ky. App. 2003). In fact, the concept is practically genetic in our jurisprudence. And there is no better explanation of substantial evidence in Kentucky case law than the original one found in *American Rolling Mill Co. v. Pack*, 278 Ky. 175, 128 S.W.2d 187 (1939).

When it initially described "substantial evidence" in *American Rolling Mill*, Kentucky's highest Court was "more or less general in its terms." *Id.* at 190. Then it engaged in an "elucidation [that] sheds light on our general interpretation referred to and gives it more definite limitations. It better defines the route to be traveled by the courts in reviewing the findings of fact by administrative boards, including that of the compensation board." *Id.* at 191. The Court said substantial evidence:

> means evidence which is substantial, that is, affording a
> substantial basis of fact from which the fact in issue can
> be reasonably inferred. Substantial evidence is more than
> a scintilla, and must do more than create a suspicion of the

existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

*Id.* at 190 (internal quotation marks and citations omitted). Logic suggests relief from the final order of an agency head, consisting of specialists in the regulated field, would be rarer than grants of directed verdict. If Gauze's case had been tried to a jury upon the evidence in this administrative record, it would have easily survived a directed verdict motion. The conclusion could not be avoided that Kentucky Retirement Systems' final order is supported by substantial evidence.

Ignoring its own tacit acknowledgement that substantial evidence supports the Systems' ruling, the majority then cites *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454 (Ky. App. 2003) and *Kentucky Retirement Systems v. Ashcraft*, 559 S.W.3d 812 (Ky. 2018) as explanations of the substantial evidence standard of KRS 13B.150(2)(c). Citing that subsection (2)(c) and both *McManus* and *Ashcraft*, the majority opinion says "the qualitative element of the evidence is critical . . . ." Majority opinion, *supra*, at p.8. The majority concluded that, to be meaningful, judicial review of an agency decision "must -- perforce -- entail a court's review of the same evidence that was *initially weighed* by an administrative body." Majority opinion, *supra*, at p.13 (emphasis added). Use of

the adjective "initially" clearly suggests a subsequent reweighing is justified. That is not so.

*McManus* and *Ashcraft* do not allow the same evidence that was *initially* weighed by an administrative body to be reweighed by a court. These cases are not focused on subsection (2)(c) of KRS 13B.150, but on subsection (2)(d). That is the clearer lesson of *Bradley v. Kentucky Retirement Systems*, 567 S.W.3d 114 (Ky. 2018), which was rendered the same day as *Ashcraft*.

After explaining the substantial evidence analysis, the Supreme Court in *Bradley* considered a rhetorical question:

> One may rightfully query whether once a court finds substantial evidence supporting the Board's decision, there could ever be a circumstance where the denied applicant still prevails because his or her proof is so compelling that no reasonable person could have failed to be persuaded. However, as we explained in *Ashcraft*, some cases may contain substantial evidence of record supporting either of the two sides. Indeed, in the view of the majority of the Court of the Appeals' panel in this very case, "the record contains medical evidence sufficient to support both the conclusion that Bradley suffers from Lyme disease and the conclusion that she does not." In cases such as this where the evidence may, at least at first blush, be perceived to be in equipoise, the *McManus* "compelling evidence" standard properly breaks the tie. It does so by implementing the legislative command that the courts "not substitute [their] judgment for that of the agency as to the weight of the evidence on questions of fact," KRS 13B.150(2), while outlining an understandable test for determining if the fact-finder was "arbitrary, capricious or . . . abuse[d] [its] discretion" *in violation of KRS 13B.150(2)(d)* when assessing the evidence.

- 26 -

*Id.* at 119-20 (emphasis added); *Ashcraft*, 559 S.W.3d at 820 ("If this high [*McManus*' 'compelling evidence'] standard is met, so is KRS 13B.150(2)(d).").

After acknowledging the evidence in the administrative record "to be in equipoise,"[10] the majority opinion ultimately concludes Gauze's evidence was "so compelling that no reasonable person could deny her eligibility for disability benefits." Majority opinion, *supra*, at p.9. Viewed through the lens of *Bradley*, this is the same as concluding the Kentucky Retirement Systems' decision is "[a]rbitrary, capricious, or characterized by abuse of discretion[,]" KRS 13B.150(2)(d), none of which the majority held or could hold. In this case, just as in *Ashcraft*, "there are no grounds for reversal of that administrative decision on judicial review." *Ashcraft*, 559 S.W.3d at 822 (footnote omitted).

I agree with the Kentucky Retirement Systems that the circuit court failed to follow CR 77.02, and I agree that the circuit court substituted its judgment for that of the agency. To paraphrase the Supreme Court, the evidence favoring Gauze, who bore the burden of proof, was not "so compelling that the agency's decision is properly seen as arbitrary or capricious or reflecting an abuse of

---

[10] "There is no doubt that there is ample evidence in this record supporting both sides." Majority opinion, *supra*, at p.8.

discretion." *Id.* at 820.  Gauze never met that standard.  For these reasons, I respectfully dissent.

BRIEFS FOR APPELLANT:

Leigh A. Jordan Davis
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Jerald Bryan LeMaster
Somerset, Kentucky