RENDERED: NOVEMBER 1, 2018
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2017-SC-000345-DG

DATE 11/26/18 Kim Redmon, DC

KENTUCKY RETIREMENT SYSTEMS                      APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                CASE NO. 2016-CA-000114-MR
FRANKLIN CIRCUIT COURT NO. 14-CI-00498

RONALD ASHCRAFT                                   APPELLEE

## OPINION OF THE COURT BY JUSTICE HUGHES

## REVERSING

An incapacitated member of the Kentucky Retirement Systems (KERS)[1]

may apply for disability retirement pursuant to Kentucky Revised Statute (KRS)

61.600. If the statutorily-created medical review panel recommends that the

member's disability retirement application be denied, the applicant may then

request a formal hearing before a hearing officer who will issue a recommended

order to the KERS Board of Trustees, the administrative body charged with

making the final decision. This case, initially brought by Ronald Ashcraft, a

former employee of the Grant County Board of Education,[2] presents an oft-

---

[1] We use the initials KERS rather than KRS to avoid confusion with initials used to designate the Kentucky Revised Statutes.

[2] Ashcraft was a member of the County Employees Retirement System (CERS), which is administered by the Board of Trustees of the Kentucky Retirement Systems. KRS 78.780(1). Although CERS is created through KRS Chapter 78, KRS 78.545 specifically refers to and incorporates a number of administrative matters from KRS

recurring issue regarding the role of the courts on judicial review of KERS's final decision as to a member's entitlement to disability retirement. KRS 61.665(5). Having concluded that the Court of Appeals' disposition of this case is not consistent with the controlling statute and our stated standard of review for disability retirement matters, we reverse.[3]

## RELEVANT FACTS

In September 2000, Ashcraft became a member of the County Employees Retirement System, which is administered by KERS. The Grant County Board of Education employed Ashcraft as an HVAC technician, a position classified as "medium work."[4] As an HVAC technician, Ashcraft was responsible for maintaining the HVAC systems in Grant County schools and carrying all tools required to repair and install equipment. On August 1, 2011, Ashcraft sustained a work-related injury to his neck, upper back, and shoulders when a 29-pound vacuum pump fell from above and struck him between the shoulder blades.

In September 2011, Ashcraft was diagnosed with cervical and lumbar strain and with tension headaches from muscle contractions. After seeking

Chapter 61, such as disability retirement conditions, medical examinations, and hearing procedures. KRS 78.545(10)-(14), (22); *see also* KRS 78.780(1) requiring the Board to "carry out the provisions of KRS 78.510 to 78.852 in the same manner in which it administers the Kentucky Employees Retirement System[]."

[3] Another opinion issued today, *Bradley v. Kentucky Retirement Systems*, 2017-SC-000275-DG, also addresses the judicial review standard in KERS disability retirement cases.

[4] *See* KRS 61.600(5)(c), which sets forth the standards for physical exertion requirements.

2

treatment, Ashcraft was initially given work activity restrictions on lifting and pulling. He was also placed on light and modified duty at work.

Ashcraft filed for disability benefits on June 8, 2012, and his application was denied by a majority of the review panel on August 24, 2012. The reviewing physicians noted a lack of objective medical evidence in the record. Ashcraft again applied for disability benefits and supplemented the record with a workers' compensation examination performed by Dr. Vaughn on August 30, 2012. Dr. Vaughn reported his objective findings of pain in the cervical and lumbar areas, but that the findings were due to degenerative changes compatible with Ashcraft's age. Dr. Vaughn believed that Ashcraft could return to work with a 50-pound lifting restriction and that Ashcraft's total impairment was 10 percent, due to his cervical and lumbar impairments. Ashcraft also tendered evidence from his orthopedist, indicating this physician placed him on light duties without strenuous exertion, and the opinion of another physician who stated that Ashcraft could not return to his previously-held position. The medical review panel eventually denied his second application for benefits in a 2-1 decision rendered December 19, 2012.

Meanwhile, even though Ashcraft was permitted to perform modified duty for some time, he was ultimately taken off work by one of his physicians. After exhausting his Family and Medical Leave Act (FMLA) time and sick leave, his last date of paid employment was October 18, 2012. In a letter dated October 25, 2012, the Grant County Board of Education terminated Ashcraft because no accommodations were available for light duty work in his job

classification as an HVAC technician. His employer stated that even though Ashcraft was given modified duties for five months, the job description for an HVAC technician required the ability to lift up to 70 pounds.

Ashcraft requested an administrative hearing, which was held on October 1, 2013. The hearing officer determined that Ashcraft submitted sufficient objective medical evidence to support his assertion that the cumulative effect of his neck, upper back, and lower back pain, and pain in his left hip and leg physically incapacitated him on a permanent basis. In the report dated December 18, 2013, the hearing officer recommended granting Ashcraft's disability benefits application, with review in two years. KERS filed exceptions to the hearing officer's recommendation.

The Disability Appeals Committee (DAC) of the Board of Trustees of the Kentucky Retirement Systems (Board) met on February 21, 2014, and on March 27, 2014,[5] to consider the hearing officer's recommendation. After fully considering the administrative record, the DAC denied Ashcraft's application for disability benefits. In its findings, the DAC noted that two physicians (Vaughn, Lyon), a vocational consultant (Crystal) and an exercise physiologist (Pounds) determined that Ashcraft could lift up to 50 pounds, which is the

_____

[5] The online Minutes of the Disability Appeals Committee for February 21, 2014, reflect that the Ashcraft case was raised at that meeting. The members unanimously voted to reject the Hearing Officer's Report and to issue an order denying the application. The order was not issued until the following month, when the Appeals Committee met on March 27, 2014. *Minutes of Disability Appeals Committee – February 21, 2014*, KENTUCKY RETIREMENT SYSTEMS, https://kyret.ky.gov/About/Board-of-Trustees/Committee%20Minutes/February212014DACMinutes.pdf.

4

stated requirement for "medium duty work" as outlined in KRS 61.600(5)(c). The DAC found that Ashcraft did not prove by a preponderance of objective medical evidence that he was functionally incapacitated from performing the HVAC technician job or a job of like duties. Additionally, the DAC pointed out that Ashcraft himself stated that he would still be able to do many jobs that did not require bending over or kneeling down to work, as the HVAC technician position did.

After the DAC denied his claim, Ashcraft appealed to the Franklin Circuit Court. In an order entered December 28, 2015, the trial court affirmed the final order of the Board. The trial court concluded that the Board's decision was supported by substantial evidence and that, upon judicial review, Ashcraft had failed to show that the evidence was so overwhelming as to compel a finding in his favor. The trial court cited the *McManus* standard, which provides that "[w]here the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it." *McManus v. Ky. Retirement Sys.*, 124 S.W.3d 454, 458 (Ky. App. 2003). As the trial court noted, Ashcraft had the burden of proof in making his claim for KERS disability benefits.

5

On appeal to the Court of Appeals, that court reversed, having concluded that substantial evidence compelled a finding in Ashcraft's favor.[6] The appellate court remanded the case to the trial court with instructions that that court order the Board to reinstate the hearing officer's recommendation.

We granted discretionary review to reexamine the appropriate standard for judicial review of denials of applications for state permanent disability retirement benefits, and to address the deference accorded to the fact-finding agency pursuant to KRS 13B.150. Additional facts relevant to the specific issues presented are discussed below.

## ANALYSIS

### I. The KERS Board Is the Fact-Finder and Its Final Decision Must Be Supported by Substantial Evidence

A person whose retirement is administered by KERS may seek disability retirement when he or she is physically or mentally incapacitated to perform his or her job, or jobs of like duties. KRS 61.600(3).[7] A medical review panel

---

[6] The three-judge appellate panel issued a divided opinion, with the dissenting judge opining that the *McManus* standard required the court to affirm the trial court and Board.

[7] KRS 61.600(3) provides:

Upon the examination of the objective medical evidence by licensed physicians pursuant to KRS 61.665, it shall be determined that:

(a) The person, since his last day of paid employment, has been mentally or physically incapacitated to perform the job, or jobs of like duties, from which he received his last paid employment. In determining whether the person may return to a job of like duties, any reasonable accommodation by the employer as provided in 42 U.S.C. sec. 12111(9) and 29 C.F.R. Part 1630 shall be considered;

(b) The incapacity is a result of bodily injury, mental illness, or disease. For purposes of this section, "injury" means any physical harm or damage to the human organism other than disease or mental illness;

6

consisting of three physicians appointed by the KERS Board evaluates the medical evidence submitted in support of the application and recommends either approval or denial. KRS 61.665. If two or more examiners recommend approval, "the system [KERS] shall make retirement payments in accordance with the retirement plan selected by the person." KRS 61.665(2)(e). If two or more examiners recommend denial, the applicant may file additional supporting medical information for further consideration or file a request for a formal hearing. KRS 61.665(2)(f). If a formal hearing is requested, KERS may require the applicant to submit to one or more medical or psychological examinations. KRS 61.665(3)(c).

The hearing is conducted by a hearing officer in accordance with KRS Chapter 13B. KRS 61.665(3). The applicant has the burden of proof, with the burden of persuasion being "met by a preponderance of the evidence in the record." KRS 13B.090(7). Pursuant to statute and regulations, the hearing officer is required to make a report and recommended order containing findings of fact and conclusions of law, and the parties are allowed to file exceptions. KRS 13B.110; 105 Ky. Admin. Reg. 1:215, § 5.

---

(c) The incapacity is deemed to be permanent; and

(d) The incapacity does not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent. For purposes of this subsection, reemployment shall not mean a change of employment between employers participating in the retirement systems administered by the Kentucky Retirement Systems with no loss of service credit.

The hearing officer's report and recommended order and any exceptions are submitted to the KERS Board, which is authorized to establish an appeals committee "to act upon the recommendations and reports of the hearing officer . . . ." KRS 61.665(4). The Board's final order "shall be based on substantial evidence appearing in the record as a whole and shall set forth the decision of the board and the facts and law upon which the decision is based." KRS 61.665(3)(d).

Judicial review of the KERS disability retirement decision is controlled by KRS 13B.150, with subsection (2) setting forth the standard of review.

> *The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.* The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
>
> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

(Emphasis supplied.) Importantly, the first sentence of this subsection mandates that the courts not substitute their judgment "for that of the

agency," which in KERS cases is the Board. *Ky. Retirement Sys. v. Brown*, 336 S.W.3d 8, 13-14 (Ky. 2011) (discussing role of KERS as "finder of fact").

Recognizing the deference to be accorded the KERS Board, this Court has adopted then-Judge, later Justice, McAnulty's statement in *McManus* as an accurate statement of the appropriate standard of review. *McManus* stated:

> Determination of the burden of proof also impacts the standard of review on appeal of an agency decision. When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people. *See Bourbon County Bd. of Adjustment v. Currans*, Ky. App., 873 S.W.2d 836, 838 (1994); *Transportation Cabinet v. Poe*, Ky., 69 S.W.3d 60, 62 (2001) (workers' compensation case); *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it. *See Currans, supra; Carnes v. Tremco Mfg. Co.*, Ky., 30 S.W.3d 172, 176 (2000) (workers' compensation case); *Morgan v. Nat'l Resources & Environ. Protection Cabinet*, Ky. App., 6 S.W.3d 833, 837 (1999). "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact." *Aubrey v. Office of Attorney General*, Ky. App., 994 S.W.2d 516, 519 (1998) (citing *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 309 (1972)).

124 S.W.3d at 458. *See Brown*, 336 S.W.3d at 14 (*McManus* "best describes the appellate standard, and thus is worthy of our adoption."). *Accord Ky. Retirement Sys. v. Wimberly*, 495 S.W.3d 141 (Ky. 2016).

In this case, KERS rejected the hearing officer's report recommending disability retirement benefits and, in so doing, focused on four factual findings.

9

First, although the hearing officer found Ashcraft's credibility to be "good" and "consistent with medical records," the KERS Board deemed his credibility "fair" stating:

> [H]is assertions that his pain level is always 8/10 (and sometimes even 10/10) are suspect in light of the fact that he only takes over the counter pain relievers. While it is certainly true that someone on blood thinners should be cautious about adding medications, there <u>are</u> analgesics available that are safe to use with blood thinners. It's unlikely the Claimant's physicians would not offer him such relief <u>if</u> he was truly experiencing pain at the levels he alleges.

Next, the Board considered the objective medical evidence relevant to Ashcraft's ability to lift objects. The Board identified two physicians, Drs. Vaughn and Lyon, who opined that Ashcraft retained the ability to lift up to 50 pounds and a vocational consultant, Dr. Crystal, who reached a similar conclusion, *i.e.*, that Ashcraft could perform medium duty jobs. A fourth person, Mr. Pounds, an exercise physiologist, performed an evaluation of Ashcraft requested by Dr. Lyon and concluded that Ashcraft could lift up to 50 pounds, while noting his "numerous performance inconsistencies and self-limiting effort." Third, the Board emphasized that even a lifting restriction that was lower than what was required for the specific Grant County Board of Education job[8] was not determinative of the alleged permanent disability because the statute required the applicant to show incapacity to perform that job or a "job of like duties." As to the latter, vocational consultant Dr. Crystal noted that with or without

---

[8] The HVAC technician job required the ability to lift objects weighing up to 70 pounds according to the October 25, 2012 letter from the Superintendent of the Grant County Schools.

10

additional education or training Ashcraft "is capable of returning to a wide range of the type of work he has done in the past." Finally, the Board noted that Ashcraft's position statement acknowledged that he did not consider himself totally disabled but rather that he needed a position that did not require the bending, kneeling or lifting that the HVAC technician job required. The Board concluded that Ashcraft had "not provided a preponderance of objective medical evidence that he is functionally physically incapacitated from performing the job of a HVAC Technician or a *job of like duties*" (emphasis in original).

On its face and in light of the record as a whole, the Board's final order is both based on substantial evidence and it reflects the facts and law upon which the decision is based. KRS 61.665(3)(d). To address the appropriate judicial review of this order, we begin with the circuit court's opinion and order.

## II. The *McManus* Standard, in Conjunction with KRS 13B.150, Provides the Proper Standard for Judicial Review of KERS Disability Retirement Decisions

The Franklin Circuit Court concluded that substantial evidence supported the Board's decision, and that Ashcraft's argument that the testimony of his treating physicians was improperly discounted failed to acknowledge this Court's holding in *Kentucky Retirement Systems v. Bowens* that treating physicians are not to be afforded greater deference than other medical providers. Indeed, in that KERS case we clarified that whatever the rule in Social Security proceedings or other arenas "there is no . . . Kentucky statute authorizing greater weight to be given to the opinions of the treating

11

physician." 281 S.W.3d 776, 784 (Ky. 2009). After finding substantial evidence, the circuit court, quoting the *McManus* standard, ultimately found that Ashcraft had not proffered evidence that was so overwhelming that it compelled a ruling in his favor. The *McManus* standard is the appropriate lens through which the trial court, and subsequent courts, should review a final order from KERS.

Under the *McManus* standard, a reviewing court considers whether the party who had the burden of proof, here Ashcraft, met that burden before the fact-finder, here the Board. Because the Board in this case did *not* find that Ashcraft had met his burden, the second sentence of the *McManus* test — "whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it" — is the operative standard for judicial review. Nevertheless, the trial court took a two-step approach by first considering whether the Board had issued a final order properly supported by substantial evidence; KRS 61.665(3)(d). We find this two-step approach appropriate because it hews to the language of KRS 13B.150, which identifies seven potential grounds for reversal including that the Board's order is "[w]ithout support of substantial evidence on the whole record." KRS 13B.150(2)(c). It also reinforces the mandate of KRS 61.665(3)(d) which requires the Board's order to be based "on substantial evidence appearing in the record as a whole . . . ." If there had been an absence of substantial evidence supporting the Board's opinion, that alone would have required reversal under the statutory standard. So, the Franklin Circuit Court properly

12

made that threshold determination and, having found substantial evidence, turned to the inquiry applicable because the Board found Ashcraft had not met his burden of proof: Was the evidence in Ashcraft's favor so compelling that no reasonable person could have failed to be persuaded by it?

We reaffirm the wisdom and applicability of the *McManus* statement because it properly reflects the deference to be given to the fact-finder. *See* KRS 13B.150(2) ("The court *shall not* substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." (emphasis supplied)). Realistically, there are cases where the record can fairly be read as containing substantial evidence in favor of both sides. However, Kentucky law is clear that the fact-finding agency is charged with making the "call" in those difficult cases and outlining the grounds for the result reached. Simply put, the agency is the decider on issues of fact. Thus, under the *McManus* standard, a court cannot substitute its judgment on those contested issues of fact but if the appealing party has not met his burden of proof with the fact-finder, the court can properly, indeed must, consider whether that party's proof was so compelling that no reasonable person could have failed to be persuaded. If this high standard is met, so is KRS 13B.150(2)(d) which allows for reversal when a final order is "[a]rbitrary, capricious, or characterized by an abuse of discretion."

Simply put, the second part of the *McManus* standard allows for court intervention, reversal, where the evidence favoring the party with the burden of proof is so compelling that the agency's decision is properly seen as arbitrary or

13

capricious or reflecting an abuse of discretion. Stated differently, the *McManus* standard captures how courts properly assess arbitrariness, capriciousness or abuse of discretion by the agency fact-finder in cases where the party with the burden of proof has lost.[9] Before applying that standard to the case before us, we address a specific issue Ashcraft has raised regarding the determination of witness credibility.

### III. The Hearing Officer's Credibility Determinations Are Not Binding on the Board

As noted, the hearing officer found Ashcraft's credibility to be "good" while the Board deemed it only "fair," citing his claim of pain at a level of 8 on a scale of 1-10 as "suspect in light of the fact that he only takes over the counter pain relievers." Ashcraft insists that the hearing officer is entitled to deference on matters of credibility, a concept the Court of Appeals gave credence to when it compared the Board's conclusion to the hearing officer's assessment "based upon her first-hand observation of his demeanor" and then relied on an unpublished Court of Appeals opinion, *Baker v. Commonwealth*, 2005-CA-001588-MR, 2007 WL 3037718, at *24-25 (Ky. App. Oct. 19, 2007). In dicta, the *Baker* court cited federal case law for the proposition that absent clear error an agency should be reluctant to disturb the findings of a hearing officer who "having heard the evidence and seen the witnesses, is best qualified to

---

[9] Obviously, other circumstances could give rise to a finding of arbitrary or capricious conduct, such as an agency rule that anyone submitting more than five physicians' reports is automatically denied benefits or every application filed on Tuesday is denied. In those rather absurd cases, the KRS 13B.150(2)(d) standard is clearly met and the "compelling evidence" standard need not be reached.

decide . . . ." *Id.* (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 494 (1951)). Ashcraft continues to advance this argument in this Court.

Kentucky law does not require an agency to defer to the credibility determinations of its hearing officer. In fact, our law underscores the agency's superior role in all factual determinations by expressly providing that the agency may accept the hearing officer's recommended order as its own "or it may reject or modify, in whole or in part, the recommended order, or it may remand the matter, in whole or in part, to the hearing officer for further proceedings as appropriate." KRS 13B.120(2). Neither this Court nor the Court of Appeals in a published decision has adopted the position that the hearing officer has greater authority in credibility determinations, and to do so would be counter to the plain language of the statute.

An analogous situation arose in *Bowens*, wherein this Court held that the Court of Appeals could not adopt a new evidentiary doctrine that conflicts with the statutory scheme controlling administrative matters. In that case, the appellate court had looked to federal law to conclude that treating physicians' opinions should be accorded more weight than the opinions of non-treating physicians. 281 S.W.3d at 784. In reversing, this Court unanimously concluded that administrative triers of fact in Kentucky are required to evaluate the evidence and give it the weight the fact-finder deems appropriate. *Id.* (citing *McManus*, 124 S.W.3d at 457-58 and *Bowling v. Nat. Res. and Environ. Protection Cab.*, 891 S.W.2d 406 (Ky. App. 1994)). No Kentucky statute authorizes giving greater weight to treating physicians' opinions and

15

"[a]s administrative agencies are creatures of statute, such a rule is inappropriate." *Bowens*, 281 S.W.3d at 784 (citing *Dept. of Nat. Res. and Environ. Protection Cab. v. Stearns Coal and Lumber Co.*, 563 S.W.2d 471 (Ky. 1978)).

The same can be said here; a rule giving the hearing officer greater authority in determining witness credibility than the Board is inappropriate. Although only the hearing officer hears the testimony first-hand, the DAC of the Board has a full video recording of the testimony for review, allowing committee members to observe a witness's demeanor. In any event, credibility also extends beyond demeanor in the course of providing testimony to include statements such as those made by Ashcraft in his position statement and cited by the Board in its opinion. Credibility may also be broadly considered to include evidence such as Mr. Pounds's observations that during testing Ashcraft's results reflected "numerous performance inconsistencies and self-limiting effort." In sum, our statutes and caselaw leave the weighing of the evidence to the fact-finder — here the KERS Board — and that weighing includes credibility determinations.

## IV.   Substantial Evidence Supports the Board's Decision and the Evidence of Record in Favor of Ashcraft Is Not So Compelling That No Reasonable Person Could Have Failed to Be Persuaded by It

The Court of Appeals concluded that substantial evidence existed to support Ashcraft's disability retirement application and that it compelled a finding in his favor. The appellate court highlighted the medical evidence from three of Ashcraft's treating physicians, all of whom did not think Ashcraft could

16

perform his former job and/or issued lower lifting restrictions. Noting that the Board had "discounted Ashcraft's credibility," the appellate court found it unsurprising that the Board was not persuaded by these treating physicians' opinions, which the court found persuasive. While that is certainly a valid observation, it also reflects a reweighing of the evidence and substitution of judicial judgment for an agency's factual determination, something courts are prohibited from doing by KRS 13B.150(2). ("The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."). And although the appellate court proffers a different reading of the evidence which it finds compelling, we cannot say on our review that the evidence favoring Ashcraft is "so compelling that no reasonable person could have failed to be persuaded by it." *McManus*, 124 S.W.3d at 458.

In assessing whether Ashcraft's proof is such that it reaches the high "compelling evidence" bar articulated in *McManus*, we must necessarily consider the countervailing evidence. If a given applicant's evidence was considered in a vacuum, it might be thought to meet the high standard but that evidence must always be viewed in context. To state the obvious, the compelling evidence standard is only relevant in the first instance because the agency has outlined what it believes is substantial evidence supporting a final decision denying the applicant's requested disability retirement benefit. For that reason, we believe the two-step approach taken by the trial court in this case is the best approach. Even in those cases where the applicant has failed to meet his or her burden of proof (the Board's decision is adverse), a reviewing

17

court should first consider whether substantial evidence supports the Board's decision. If there is not substantial evidence, reversal is appropriate under KRS 13B.150(2)(c). If there is substantial evidence, the court must further consider whether the applicant's proof was so compelling that no reasonable person could have failed to be persuaded.

Applying this approach, we first find substantial evidence supports the Board's decision. The Board was allowed to assess Ashcraft's credibility, and its assessment is supported by the record. The two physicians, vocational consultant and exercise physiologist provided credible and convincing evidence that Ashcraft was capable of performing medium-duty work. Ashcraft himself lent credence to this conclusion. Collectively, the evidence relied on by the Board was substantial.

Next, we cannot say that Ashcraft's proof, his physicians' evidence and other evidence supportive of his application, is so compelling that no reasonable person could fail to be persuaded by it. The compelling evidence bar is purposefully high because the fact-finding function has been committed to the Board by our General Assembly. Here, there are no grounds for reversal of that administrative decision on judicial review.[10]

## **CONCLUSION**

The Board met its statutory obligation pursuant to KRS 61.665(3)(d) by issuing an order "based on substantial evidence appearing in the record as a

---

[10] Given our disposition of this case, KERS's argument regarding later-discovered evidence pertaining to Ashcraft need not be addressed.

whole . . . ." Because the Board found that Ronald Ashcraft had failed to meet his burden of proving his permanent disability by a preponderance of the evidence, the Court must further consider whether Ashcraft's proof was so compelling that no reasonable person could fail to be persuaded by it. Having considered the record, we conclude that it was not.

For the foregoing reasons, we reverse the Court of Appeals and reinstate the final decision of the Kentucky Retirement Systems Board of Trustees.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Katherine I. Rupinen
Leigh Davis
Carrie Slayton
Jillian Leigh Hall
Anne Caroline Bass

COUNSEL FOR APPELLEE:

Charles Ed Massey