RENDERED: MARCH 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1252-MR

KENTUCKY PUBLIC PENSIONS
AUTHORITY; JOINT DISABILITY
APPEALS COMMITTEE OF
KENTUCKY RETIREMENT
SYSTEMS; AND COUNTY
EMPLOYEES RETIREMENT
SYSTEM                                                                      APPELLANTS


v.                APPEAL FROM FRANKLIN CIRCUIT COURT
                  HONORABLE PHILLIP J. SHEPHERD, JUDGE
                         ACTION NO. 19-CI-01017


BRIAN SWINT                                                                    APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CETRULO, L. JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: This is an administrative appeal by Kentucky Public

Pensions Authority, Joint Disability Appeals Committee of Kentucky Retirement

Systems, and County Employees Retirement System ("CERS") (collectively,

"KPPA" or "the Agency")[1] from the Opinion and Order of the Franklin Circuit

Court reversing the Agency's Final Order denying Brian Swint's application for

hazardous disability benefits and enhanced in line of duty ("ILOD") benefits.  The

circuit court found that the Agency acted arbitrarily and without substantial

evidence in so ruling.  We reverse and remand for reinstatement of the Agency's

Final Order.

Swint worked at Little Sandy, a medium security prison, from June

16, 2005, until January 16, 2017.[2]  His job duties involved supervising staff and

inmates, monitoring movement, and responding to emergencies, including fights

---

[1] In a notice filed in circuit court, KPPA explained recent changes in the name and governance of Kentucky Retirement Systems:

> Pursuant to [the provisions of House Bill 484 of the 2020 Regular Session of the General Assembly and House Bill 9 of the 2021 Regular Session of the General Assembly], significant changes were made to the governance and administrative structure of the Kentucky Retirement Systems, effective April 1, 2021. Most notably, the governance of the County Employees Retirement System (CERS) has been transferred to a separate CERS Board of Trustees.  A separate Board of Trustees called the Kentucky Retirement Systems (KRS) oversees the Kentucky Employees Retirement System (KERS) and the State Police Retirement System (SPRS).  The administrative entity comprising the professional staff that has traditionally been known as KRS has changed its name to the Kentucky Public Pensions Authority (KPPA), which is governed by a third Board comprised of members from the CERS and KRS Boards.  Daily systems activities of both CERS and KRS are performed by the professional staff of KPPA.

[2] Swint had been off work since July 2016 when he underwent an appendectomy unrelated to his employment at Little Sandy.

and medical issues. And relevantly, prior to working at Little Sandy, Swint worked from October 1994 to June 2005 as an officer at Lucasville Prison, a maximum security prison in Ohio, where he oversaw the death house and one of the segregation units.

As noted in footnote 2, Swint had an appendectomy in July 2016, and he never returned to his work at Little Sandy. In October of that year, based upon symptoms he was experiencing, Swint underwent a psychiatric evaluation at Regional Psychotherapy Service in Ashland. The report detailed the history of his problem as follows:

> 53 year old married, employed, Caucasian male from Grayson, KY who is a self referral for complaints of depression and anxiety. Reports he probably became depressed and anxious about 10 years ago when he started drinking heavily. He has been working in Corrections for over 25 years. He has been through 4 prison riots and has witnessed over 50 executions, several suicides, and self mutilations. He has been assaulted over 50 times. He has had nightmares and flashbacks for several years. States he started drinking to self medicate. He was prescribed Ambien several years ago, but had an adverse effect. He was [sleep] walking and cooking in the middle of the night. Dr. Connett prescribed him Trazadone last month and he had seizures. He went to the ER and was prescribed Librium which was helpful. He believes his depression, anxiety, and drinking have worsen[ed] the past month or so. He has been off work since July for an appendectomy and dreads returning. He is thinking about applying for disability. Current symptoms include depressed, irritable, and anxious mood, occasional angry outbursts, difficulty falling and staying asleep, frequent nightmares and flashbacks,

drinking too much, being easily startled, feeling keyed up, mind racking, shaking, and stress. Relieving factors are farming and hobbies. Stressor includes returning to work.

As a result of the evaluation, Swint was diagnosed with post-traumatic stress disorder ("PTSD"), unspecified, based upon "[f]requent nightmares and flashbacks for several years stemming from prison riots, executions, suicides, and self mutilations." He was also diagnosed with "other recurrent depressive disorders" due to his depressive symptoms, and with alcohol dependence, uncomplicated, due to his heavy drinking for several years. Supportive therapy was recommended. He was to continue taking Librium and start taking Zoloft and Revia.

On November 3, 2016, Swint filed an application pursuant to Kentucky Revised Statutes ("KRS") 16.582, 16.582(6), and 16.505(19), seeking disability retirement benefits (both hazardous disability and ILOD) from his employment as a Correctional Lieutenant with the Department of Corrections at Little Sandy Correctional Complex ("Little Sandy"). At the time he sought retirement benefits, Swint had 163 months, or 13.67 years, of qualifying service credit.[3]

_____

[3] In addition to his 140 hours of hazardous service in his KERS account from his employment at Little Sandy, Swint had 23 months of non-hazardous service in a CERS account from his prior employment as a deputy in Greenup County from November 1992, through September 30, 1994.

In his statement of disability, Swint provided the following details in support of his application:[4]

> 1. List the diagnoses of the injury, illness or disease for which you are applying for disability:
>
> Became depressed approx. 10 years ago and began self medicating after witnessing multiple suicides and executions. Have been diagnosed with severe depression, anxiety and PTSD. I am currently under Dr. care with Dr. Beaumont at Beaumont Medical Center.
>
> 2. Describe how the diagnoses listed above on this page prevent you from performing your essential job duties:
>
> I am having severe anxiety when around large groups. Quick to get angry and become agressive.
>
> 3. Describe the history of the diagnoses listed above, including the onset or start of your symptoms or complaints:
>
> The above problems became severe after the assault last November with nightmares and severe anxiety. Currently taking medication for anxiety with little effect.
>
> . . .
>
> 4b. If you are a hazardous employee, are you claiming that you are disabled as a result of an act in the line of duty?
>
> [checkmark] Yes, this is the direct result of an injury sustained while performing the principal duties of the hazardous position.
>
> [no checkmark] No

---

[4] Errors in original.

If you answered yes to 4a or 4b, describe the specific date, time, and circumstances of the duty related injury or act in line of duty below. <u>Please attach a copy of the employer incident report to this form. Failure to attach the employer incident report will delay your disability application.</u>

I have been assaulted multiple times last time [October] 2015 I was struck in the back of head with unknown object resulting in KSP investigation and charges being filed against the inmate.

Pursuant to KRS 61.665, three medical examiners reviewed Swint's application, including supporting medical records and incident reports from Little Sandy and Lucasville Prison, and rendered recommendations on whether to approve or deny his request for disability retirement benefits. Dr. William Keller, the only examiner to recommend that Swint's application be approved, was persuaded that Swint was "psychiatrically disabled by anxiety, depression, and post-traumatic stress disorder[,]" that he had an problem with excess drinking, and that he did "not appear to be psychologically fit to remain as a Corrections Officer[.]" Dr. Keller did not discuss the issue of whether Swint's incapacity was the result of a pre-existing condition, which is a bar to collecting benefits. KRS 16.582(3)(c). Dr. William Duvall recommended denial of Swint's application, noting that he only had 13.67 years of membership, when a full 16 years is required for pre-existing conditions to be waived. *Id.* Dr. Duvall believed Swint submitted inadequate documentation to establish his claims and that he needed to

submit recent and historical records from his primary care physicians as well as any specialists he had seen. Dr. Nancy K. Mullen also recommended denial of his application based upon his pre-existing history of trauma, which resulted in his diagnoses of PTSD and depression. She noted that the majority of the incident reports Swint filed to support his claim predated his 2005 reemployment date.

The Agency issued a denial letter on May 16, 2017, based upon the denial recommendations of two of the three medical examiners. Swint then requested a formal administrative hearing, stating that the decision was not based upon law or fact and that neither his physical and mental conditions nor the adverse impact of his employment had been properly considered. The Agency sought Swint's personnel records from Ohio, but as he had resigned in 2005, the records had not been retained. It also sought and filed medical records from King's Daughters Medical Center, Southern Ohio Medical Center, Regional Psychotherapy Service, Family Medical Center, and Our Lady of Bellefonte Hospital, as well as from Kentucky State Police.

The Hearing Officer conducted an administrative hearing on August 23, 2018, during which he heard testimony from Swint and his wife, Lisa Swint. Swint testified about his 25-year work history as a correctional officer in Kentucky and Ohio, including incidents with inmates during his time at Lucasville Prison, a maximum security prison in Ohio, and at Little Sandy, a medium security prison in

Kentucky. He also testified about his mental health issues and treatment as well as his alcohol use. Swint claimed that his PTSD was triggered by the October 2015 assault incident cited in his disability retirement application. Mrs. Swint testified about his October 2015 injury, his drinking, and his mental health treatment.

The Hearing Officer kept the record open for the filing of additional proof, and he permitted the parties to file position statements. In his position statement, Swint asserted that the:

> Medical, documentary and testimonial evidence is sufficient to show that his depression, (sic) anxiety, were enhanced by the event of October 2015, when he was assaulted by an inmate, causing an injury to his head, but, the on duty incident led to cause (sic) him to seek treatment, and receive the diagnosis of Post-traumatic stress disorder. It was the Post-traumatic stress disorder and the symptoms that . . . accompany said condition that negated his ability to work and affected his personal pursuits. His condition, symptoms and medication for Post-traumatic stress disorder are of record and compelling.

The Agency, in reply, stated that Swint had abandoned his hazardous disability claim on the basis of depression and anxiety when he listed PTSD as the sole basis for his hazardous disability. It also claimed that, pursuant to *Kentucky Retirement Systems v. West*, 413 S.W.3d 578, 581 (Ky. 2013), Swint had the burden, as a claimant with less than 16 years of service credit, to prove through objective medical evidence that his alleged disability did not pre-exist his employment at Little Sandy, and he failed to satisfy this burden when he did not

produce any medical records prior to or contemporaneous with his June 16, 2005, employment date. The Agency further argued that because the incident reports from Ohio showed many of the traumatic events, including suicides, executions, and assaults, that Swint noted on his application as the impetus to his depression, Swint had to have been symptomatic for PTSD while working in Ohio. And, because his PTSD was known or reasonably discoverable prior to his employment at Little Sandy, the Agency concluded that Swint was ineligible for benefits. Finally, the Agency also argued that Swint was ineligible for total and permanent hazardous disability because he did not meet the criteria under KRS 16.582(1)(a).

The Hearing Officer entered his findings of fact, conclusions of law, and recommended order on August 2, 2019. The Hearing Officer found that Swint failed to show by a preponderance of the objective medical evidence that he was totally disabled from his hazardous duty position since his last day of paid employment ("LDOPE") and the 12 months immediately following that date, that his hazardous disability was directly caused by an act in the line of duty, or that the conditions for which he was applying for disability did not pre-exist his membership date in KERS, for which he had the burden of proof pursuant to *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454 (Ky. App. 2003). Swint did not show that he had at least 16 years of membership credit or that his pre-existing condition was "substantially aggravated by an injury or accident

arising out of or in the course of employment to the preexisting condition." The Hearing Officer did not find Swint's testimony regarding his disability to be credible because it was not supported by objective medical evidence and recommended his application for hazardous disability retirement benefits and ILOD benefits be denied.

> The substantial aggravation of a preexisting condition argument was not raised by the Claimant or discussed by the parties. Claimant allegation the October 2015 injury caused the PTSD and led to his disability warrants a discussion. This was discussed with the ILOD issue because the issues are similar in that the Claimant did not have to cease work due to the injury, was treated at the facility without any major medical treatment, did not miss any time off work and was on duty with another incident report seven months later. The application for benefits was filed thirteen months later and there were no records showing continued medical treatment for the October 2015 injury. The mental health visits related to the events from SOCF and preexisted the reemployment date.

Swint filed exceptions to the recommended order.

On August 29, 2019, the Disability Appeals Committee of the Board of Trustees of Kentucky Retirement Systems adopted the Hearing Officer's recommended order (with two minor modifications that have no bearing on this appeal) and denied Swint's application for hazardous and ILOD disability retirement benefits.

Swint sought review of the administrative decision in the Franklin Circuit Court via a petition filed September 30, 2019, stating that it was not based in law or fact. In his supporting brief, Swint argued that there was no evidence of pre-existing PTSD, and he reasserted that his PTSD did not arise until the October 2015 assault. The Agency disputed Swint's arguments, stating he was attempting to bypass the pre-existing condition section of KRS 16.582 by dropping the argument that he was disabled due to depression and anxiety, even though he listed those conditions in his application.

On October 18, 2023, the circuit court entered an Opinion and Order reversing the Agency's final order, finding that the Agency had acted arbitrarily and without substantial evidence related to the existence of a pre-existing condition, permanent incapacity, substantial aggravation, and ILOD eligibility when it denied Swint's application.

> The Court finds that [the Agency's] conclusion that [Swint's] disabling depression, anxiety and PTSD were pre-existing conditions is not supported by substantial evidence. There is no evidence that [Swint's] PTSD pre-existed his re-employment, and to the extent that depression and anxiety pre-existed his re-employment, they were substantially aggravated by a post-employment attack on [Swint] that triggered his disability, and caused him to seek mental health treatment.

The circuit court also held that the Agency erroneously interpreted KRS 16.582(3)(a) and used that as a basis for concluding that a physical injury cannot substantially aggravate a pre-existing mental illness. This appeal now follows.

On appeal, the Agency states that the circuit court "impermissibly re-weighed the evidence, impermissibly relied upon evidence not in the administrative record, failed to give deference to the fact-finder, misstated facts, misstated arguments, and failed to properly apply the two-pronged test of judicial review set forth in" *McManus*, *supra*, and *Kentucky Retirement Systems v. Ashcraft*, 559 S.W.3d 812 (Ky. 2018). The Agency goes on to state that the Opinion and Order "demonstrated a lack of understanding of the Agency's disability retirement statutes and relevant case law, the parameters of judicial review, and evidentiary rules applicable to administrative cases governed by KRS Chapter 13B." With those overarching allegations, the Agency contends that the circuit court erred in its analysis of permanent impairment, pre-existing conditions, substantial aggravation, and ILOD benefits. We agree.

The *Ashcraft* Court addressed both the procedure to be followed in retirement disability cases[5] as well as the applicable judicial review. KRS 13B.150(2) provides the statutory basis for judicial review:

---

[5] The *Ashcraft* Court detailed the applicable procedure as follows:

-12-

> The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
>
>> (a) In violation of constitutional or statutory provisions;
>>
>> (b) In excess of the statutory authority of the agency;

A person whose retirement is administered by KERS may seek disability retirement when he or she is physically or mentally incapacitated to perform his or her job, or jobs of like duties. KRS 61.600(3). A medical review panel consisting of three physicians appointed by the KERS Board evaluates the medical evidence submitted in support of the application and recommends either approval or denial. KRS 61.665. If two or more examiners recommend approval, "the system [KERS] shall make retirement payments in accordance with the retirement plan selected by the person." KRS 61.665(2)(e). If two or more examiners recommend denial, the applicant may file additional supporting medical information for further consideration or file a request for a formal hearing. KRS 61.665(2)(f). If a formal hearing is requested, KERS may require the applicant to submit to one or more medical or psychological examinations. KRS 61.665(3)(c).

The hearing is conducted by a hearing officer in accordance with KRS Chapter 13B. KRS 61.665(3). The applicant has the burden of proof, with the burden of persuasion being "met by a preponderance of the evidence in the record." KRS 13B.090(7). Pursuant to statute and regulations, the hearing officer is required to make a report and recommended order containing findings of fact and conclusions of law, and the parties are allowed to file exceptions. KRS 13B.110; 105 Ky. Admin. Reg. 1:215, § 5.

The hearing officer's report and recommended order and any exceptions are submitted to the KERS Board, which is authorized to establish an appeals committee "to act upon the recommendations and reports of the hearing officer . . . ." KRS 61.665(4). The Board's final order "shall be based on substantial evidence appearing in the record as a whole and shall set forth the decision of the board and the facts and law upon which the decision is based." KRS 61.665(3)(d).

*Ashcraft*, 559 S.W.3d at 816-17 (footnote omitted).

-13-

(c) Without support of substantial evidence on the whole record;

(d) Arbitrary, capricious, or characterized by abuse of discretion;

(e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

The *Ashcraft* Court went on to discuss the statute and associated caselaw:

Importantly, the first sentence of this subsection mandates that the courts not substitute their judgment "for that of the agency," which in KERS cases is the Board. *Ky. Retirement Sys. v. Brown*, 336 S.W.3d 8, 13-14 (Ky. 2011) (discussing role of KERS as "finder of fact").

Recognizing the deference to be accorded the KERS Board, this Court has adopted then-Judge, later Justice, McAnulty's statement in *McManus* as an accurate statement of the appropriate standard of review. *McManus* stated:

Determination of the burden of proof also impacts the standard of review on appeal of an agency decision. When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which

-14-

is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people. *See Bourbon County Bd. of Adjustment v. Currans*, Ky.App., 873 S.W.2d 836, 838 (1994); *Transportation Cabinet v. Poe*, Ky., 69 S.W.3d 60, 62 (2001) (workers' compensation case); *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it. *See Currans*, *supra*; *Carnes v. Tremco Mfg. Co.*, Ky., 30 S.W.3d 172, 176 (2000) (workers' compensation case); *Morgan v. Nat'l Resources & Environ. Protection Cabinet*, Ky.App., 6 S.W.3d 833, 837 (1999). "In its role as a finder of fact, an administrative agency is afforded great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its findings and conclusions of fact." *Aubrey v. Office of Attorney General*, Ky.App., 994 S.W.2d 516, 519 (1998) (citing *Kentucky State Racing Commission v. Fuller*, Ky., 481 S.W.2d 298, 309 (1972)).

124 S.W.3d at 458. *See Brown*, 336 S.W.3d at 14 (*McManus* "best describes the appellate standard, and thus is worthy of our adoption."). *Accord Ky. Retirement Sys. v. Wimberly*, 495 S.W.3d 141 (Ky. 2016).

*Ashcraft*, 559 S.W.3d at 817-18.

Finally, the *Ashcraft* Court discussed the two-step approach a

reviewing court must take when it considers a decision as set forth in *McManus*.

> Under the *McManus* standard, a reviewing court
> considers whether the party who had the burden of proof,
> here Ashcraft, met that burden before the fact-finder,
> here the Board.  Because the Board in this case did not
> find that Ashcraft had met his burden, the second
> sentence of the *McManus* test – "whether the evidence in
> that party's favor is so compelling that no reasonable
> person could have failed to be persuaded by it" – is the
> operative standard for judicial review.  Nevertheless, the
> trial court took a two-step approach by first considering
> whether the Board had issued a final order properly
> supported by substantial evidence; KRS 61.665(3)(d).
> We find this two-step approach appropriate because it
> hews to the language of KRS 13B.150, which identifies
> seven potential grounds for reversal including that the
> Board's order is "[w]ithout support of substantial
> evidence on the whole record."  KRS 13B.150(2)(c). . . .
>
> We reaffirm the wisdom and applicability of the
> *McManus* statement because it properly reflects the
> deference to be given to the fact-finder. . . .  Simply put,
> the agency is the decider on issues of fact.

*Ashcraft*, 559 S.W.3d at 819.  In the present case, Swint is the party with the

burden of proof and therefore must establish that substantial evidence did not

support the Agency's final order and meet the high burden that the evidence

compelled a result in his favor.  With these standards in mind, we turn to the

merits.

For our review, we shall consider the version of KRS 16.582 that was

in effect on Swint's LDOPE.  *See generally Roland v. Ky. Ret. Sys.*, 52 S.W.3d

-16-

579, 580 and 582 (Ky. App. 2000), in which this Court applied the version of the statute in effect at the time of the employee's LDOPE to determine whether her application was timely. The circuit court erred on page 24 of its opinion in stating that the Agency's final order was not a correct application of the law because the Agency "miscited" a section of KRS 16.582 (section (3)(c)3.) that "simply does not exist." This is incorrect as the Agency was properly citing to a prior version of that statute. KRS 16.582 (2013) provided, in relevant part, as follows:

> (1)  (a) Total and permanent disability means a disability which results in the member's incapacity to engage in any occupation for remuneration or profit. . . .
>
> (b) Hazardous disability means a disability which results in the member's total incapacity to continue as a regular full-time officer or as an employee in a hazardous position, as defined in KRS 61.592, but which does not result in the member's total and permanent incapacity to engage in other occupations for remuneration or profit.
>
> . . . .
>
> (3) Upon the examination of the objective medical evidence by licensed physicians pursuant to KRS 61.665, it shall be determined that:
>
> (a) The incapacity results from bodily injury, mental illness, or disease. For purposes of this section, "injury" means any physical harm or damage to the human

-17-

organism other than disease or mental illness;

(b) The incapacity is deemed to be permanent; and

(c) The incapacity does not result directly or indirectly from:

> 1. Injury intentionally self-inflicted while sane or insane;

> 2. Injury or disease resulting from military service; or

> 3. Bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent, unless:

>> a. The disability results from bodily injury, mental illness, disease, or a condition which has been substantially aggravated by an injury or accident arising out of or in the course of employment; or

>> b. The person has at least sixteen (16) years' current or prior service for employment with

employers participating in the retirement systems administered by the Kentucky Retirement Systems.

For its first argument, the Agency addresses Swint's permanent incapacity. KRS 16.582(4) defines "permanent incapacity" and how it is determined as follows:

(a) 1. An incapacity shall be deemed to be permanent if it . . . can be expected to last for a continuous period of not less than twelve (12) months from the person's last day of paid employment in a position as regular full-time officer or a hazardous position.

2. The determination of a permanent incapacity shall be based on the medical evidence contained in the member's file and the member's residual functional capacity and physical exertion requirements.

(b) The person's residual functional capacity shall be the person's capacity for work activity on a regular and continuing basis. The person's physical ability shall be assessed in light of the severity of the person's physical, mental, and other impairments. . . . The person's ability to understand, remember, and carry out instructions and respond appropriately to supervision, coworkers, and work pressures in a work setting shall be considered with regard to mental impairments. . . .

The Agency determined that Swint was not totally or permanently incapacitated pursuant to the statute either as a regular, full-time officer or as an

-19-

employee in a hazardous position. The Agency noted that Swint worked from the time of his October 2015 work injury until July 2016, during which time he did not exhibit any mental incapacity. The assessments did not establish that he was disabled and unable to return to work, and Swint did not provide objective medical evidence that he was mentally incapacitated for the twelve months following his LDOPE (January 16, 2017) because he only produced psychotherapy records through December 2016.

In reversing the Agency's decision, the circuit court held that Swint "**raised adequate proof** on the issue of **showing** he was **permanently disabled** as of the **LDOPE**" and "did sufficiently prove based on the preponderance of the evidence that he was permanently incapacitated as of the LDOPE[,]" noting that he "appeared to be suffering from a mental or nervous breakdown when he visited [providers] three times in the span of a month in September and October 2016." (Emphasis in original.) We agree with the Agency that the circuit court applied an incorrect "adequate proof" standard rather than a preponderance of the objective medical evidence standard, and that the court improperly reweighed the evidence. Rather, the substantial, objective medical evidence, as set forth extensively in the Agency's Final Order and appellate brief, supports the Agency's finding that Swint was not totally incapacitated to continue in a hazardous position. The circuit court erred in holding otherwise.

Similarly, the circuit court erred in holding that the Agency abused its discretion when it determined that Swint had failed to establish that his disability continued during the 12 months following his LDOPE. Although the circuit court was convinced by Swint's testimony that he had received treatment for his PTSD for the year following his LDOPE, Swint provided no supporting treatment records and the Agency, as the fact-finder, had the option to afford this evidence whatever weight it deemed appropriate. The Agency concluded that the testimony was not credible, and the circuit court could not reweigh this evidence in its review.

> The position of the circuit court in administrative matters is one of review, not of reinterpretation. The appellate (circuit) court is not free to consider new or additional evidence, or substitute its judgment as to the credibility of the witnesses and/or the weight of the evidence concerning questions of fact. Thus, if administrative findings of fact are based upon substantial evidence, then those findings are binding upon the appellate court.

*Ky. Bd. of Nursing v. Ward*, 890 S.W.2d 641, 642 (Ky. App. 1994) (internal quotation marks and citations omitted). *See also* KRS 13B.150(2) ("The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."). The circuit court erred as a matter of law in substituting its opinion on the weight of the evidence. We hold that Swint's proof of a continuous disability was not so compelling that no reasonable person would have failed to be persuaded. *See McManus*, *supra*, and *Ashcraft*, *supra*.

As to the filing of Swint's personnel records, we also agree with the Agency that the circuit court erred as a matter of law when it held that "as the party in interest representing his employer, the Agency had access to Swint's personnel file without the necessity of his filing it into evidence." This is incorrect, as the Agency does not represent Swint's employer, but rather the retirement systems. The circuit court could only review evidence that had been properly admitted.

For these reasons, we must reverse the circuit court's decision that Swint was permanently incapacitated.

For its second argument, the Agency addresses the circuit court's analysis of Swint's pre-existing conditions. Pursuant to KRS 16.582(3)(c)3., the incapacity cannot result, directly or indirectly, from "mental illness . . . which pre-existed membership in the system or reemployment, whichever is most recent[.]" And "the person seeking the entitlement determination must prove to the trier of fact that his or her condition was not pre-existing membership by a preponderance of the evidence." *Brown*, 336 S.W.3d at 14 (citing *McManus*, 124 S.W.3d at 458).

> [W]e do not believe it was the intent of the legislature to define as "pre-existing" those diseases and illnesses which lie dormant and are asymptomatic such that no reasonable person would have realized or known of their existence. . . . We [do] believe it the intent of our legislative authority to preclude from benefits those individuals who suffer from symptomatic diseases which are objectively discoverable by a reasonable person.

*Brown*, 336 S.W.3d at 15.

In the present case, the Agency, in its Final Order, noted that Swint failed to provide medical records prior to his reemployment date of June 16, 2005, and that he had provided 24 incident reports detailing traumatic events Swint had witnessed or experienced while working at Lucasville Prison in Ohio. These incidents include Swint being assaulted and witnessing attempted suicides, self-mutilations, and executions. Conversely, Swint only filed two incident reports from his time at Little Sandy, and these detailed the October 15, 2015, head injury, and a May 2016 incident where he was bitten and scratched. The Agency also detailed the medical records and found that Swint had "not shown [by a preponderance of the objective medical evidence] that the depression, anxiety and PTSD did not result directly or indirectly from the mental health issues that preexisted his reemployment date, and the symptoms were clearly symptomatic." The circuit court reversed this finding, at least as to his PTSD diagnosis, holding that there was no evidence to support a finding that Swint's PTSD had been triggered prior to the October 2015 incident.

We agree with the Agency that the circuit court's holding is contradicted by the evidence of record, as set forth at length in the Final Order and in the Agency's brief, that Swint's mental health issues, including his PTSD, were symptomatic and were known or discoverable prior to his 2005 reemployment

date. The circuit court ignored the evidence to the contrary and erred in reversing the Agency's decision on the issue of PTSD.

We also note that the circuit court applied an incorrect standard by holding that Swint "presented sufficient evidence" that his PTSD was caused by the October 2015 incident and, therefore, was not known or reasonably discoverable prior to his 2005 reemployment date. Finally, the Agency did not act arbitrarily when it disregarded Dr. Keller's recommendation to grant Swint's application because the other two examiners recommended denial. *See* KRS 61.655(2)(e), which requires that benefits be granted if two of the three medical examiners recommend approval.

For its third argument, the Agency states that the circuit court erred in its analysis of the substantial aggravation issue. KRS 16.582(3)(c)3.a. (2013) provided that,

> Upon the examination of the objective medical evidence by licensed physicians pursuant to KRS 61.665, it shall be determined that . . . [t]he incapacity does not result directly or indirectly from . . . [b]odily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent, unless . . . [t]he disability results from bodily injury, mental illness, disease, or a condition which has been substantially aggravated by an injury or accident arising out of or in the course of employment[.[6]]

---

[6] In addition to the substantial aggravation exception, there is a second exception for a person who has at least 16 years of current or prior service with an employer that participates in

-24-

"Injury" is defined in KRS 16.582(3)(a) as "any physical harm or damage to the human organism other than disease or mental illness[.]"

The Agency argues that based on this definition, "only an incident that results in physical harm or damage to the human organism can substantially aggravate a pre-existing mental illness." Because the October 2015 incident did not cause any physical harm or damage, it could not, therefore, support an allegation that it substantially aggravated a pre-existing mental illness. The circuit court held that the Agency erroneously interpreted KRS 16.582(3)(a) and that its "finding that a bodily injury cannot substantially aggravate a pre-existing mental illness is clearly erroneous." As the Agency argues, the circuit court misstated its argument.

In the Final Order, the Agency noted that Swint had not raised the issue of a substantial aggravation of a pre-existing condition, nor had the parties discussed it. But it briefly discussed the issue to address whether the October 2015 injury could have caused Swint's PTSD and led to his disability. The Agency, in its appellate brief, noted that Swint did not have to stop work, was treated at the facility without needing major medical treatment, did not miss any work, and did not include any medical records showing continued treatment for that injury when

Kentucky's retirement systems. KRS 16.582(3)(c)3.b. That subsection does not apply to Swint because he does not have the requisite years of current or prior service.

he filed his application for benefits more than a year later. We agree with the Agency that Swint failed to establish substantial aggravation, and the circuit court erred in reversing the Final Order on this issue.

For its fourth and last argument, the Agency addresses ILOD benefits. KRS 16.582(6) permits an applicant to qualify for enhanced ILOD benefits once he is approved for total and permanent or hazardous disability benefits "and the disability is the direct result of an act in [the] line of duty[.]" The circuit court held that the October 2015 incident was the direct act that caused his disability. Because we have reversed the circuit court's holdings that he was entitled to hazardous disability benefits, Swint is necessarily not entitled to ILOD benefits. We also agree with the Agency on the merits of this issue that the October 2015 incident – by itself – did not cause Swint's mental health conditions.

In sum, we hold that Swint failed to establish that the Agency's Final Order was not supported by substantial evidence or that the evidence compelled a result in his favor. Therefore, we hold that the circuit court erred as a matter of law in reversing the Final Order of the Agency.

For the foregoing reasons, the Opinion and Order of the Franklin Circuit Court is reversed, and this matter is remanded for reinstatement of the Agency's Final Order denying Swint's application for hazardous and ILOD disability retirement benefits.

ALL CONCUR.


BRIEFS FOR APPELLANTS:          BRIEF FOR APPELLEE:

Carrie B. Slayton                              Robin L. Webb
Frankfort, Kentucky                         Grayson, Kentucky